from 2001 or before. All of this information was apparently available in 2002, when Chen made his first motion to reopen. Moreover, the materials do not reflect changed conditions in China that impact Chen's particular situation since Chen filed his asylum application in 1996. The fact that Chen's account has changed does not trigger the exception to § 1003.2(c)(2).

█ The BIA's refusal to toll the time limit was likewise within its discretion. Chen raised his claims of ineffective assistance of counsel for the first time on August 23, 2004, twenty months after the BIA's December 20, 2002 decision. Neither the appeal to the BIA nor the petition to this Court reflects Chen's diligence in pursuing his case during those twenty months. *See Iavorski,* 232 F.3d at 135. The appeal to the BIA asserted that "he was a victim of ineffective assistance of counsel until he retained current counsel," and the petition to this Court asserts that his delay was due to his diligent efforts to collect additional evidence in order to make a bona fide motion to reopen. Given the passage of twenty months, the BIA's denial was within its discretion.

█ Finally, the BIA did not abuse its discretion in declining to exercise its *sua sponte* authority pursuant to 8 C.F.R. § 1003.2(a), having found that Chen's case presented no exceptional situation, particularly given his lack of diligence in pursuing the claim. *See Zhong Guang Sun v. DOJ,* 421 F.3d 105 (2d Cir.2005) (finding that the BIA must consider petitioner's claim that his late filing of a notice of appeal was due to extraordinary or unique circumstances). Indeed, to the extent Chen's case is exceptional, it is only in ways that militate against relief. Chen signed and swore to an asylum application that was fabricated with regard to essential elements of his claim; he testified before the IJ to the same falsehoods; and he continued the fraud on appeal to the BIA. While petitioners may assert a claim of ineffective assistance of counsel that rises to the level of a constitutional due process deprivation, due process does not insulate a petitioner from the consequence of his own dishonest acts. Moreover, it is unreasonable to think that an applicant who actually suffered such outrages as a forced abortion or involuntary sterilization would fail to mention it when asked what has driven him to flee his home country.

For the foregoing reasons, we deny Chen's petition. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Fed. R. of App. P. 34(a)(2), and Second Circuit Local Rule 34(d)(1).

**Wei Guang WANG, Petitioner,**

v.

**BOARD OF IMMIGRATION APPEALS, Respondent.**

**Docket No. 05–0832–AG NAC.**

United States Court of Appeals, Second Circuit.

NAC Calendar: Jan. 23, 2006.

Decided: Feb. 17, 2006.

Gary J. Yerman, New York, New York, for Petitioner.

Kathryn E. Ford, Assistant United States Attorney (Michelle G. Tapken, United States Attorney for the District of South Dakota, on the brief), Sioux Falls, South Dakota, for Respondent.

Before: CABRANES, RAGGI, HALL, Circuit Judges.

PETER W. HALL, Circuit Judge.

On April 16, 1997, an Immigration Judge ("IJ") denied petitioner Wei Guang Wang's request for asylum and withholding of removal, finding that he was not credible. He was granted voluntary departure, which was to take place on or before May 16, 1997. Petitioner appealed from that decision. On May 30, 2000, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision, and granted petitioner voluntary departure within 30 days of the Board's order. More than four years later, petitioner was still in the United States. Since being ordered to depart, petitioner had married and fathered two children. He sought to reopen his deportation proceedings, alleging changed country conditions and changed personal circumstances. On January 26, 2005, the BIA denied petitioner's motion to reopen on the grounds that he had not established changed conditions in China. He now appeals that decision, arguing that the BIA failed properly to consider evidence of changed country conditions.

For the reasons set forth below, we deny the petition for review.

## I. Background

Petitioner is a citizen of the People's Republic of China. According to petitioner's application, while he was living in China, his girlfriend, Yan Wei Li, became pregnant with his child. The two were denied a marriage license because petitioner was only twenty-one years old and thus too young to marry legally. Their child, Yuan Hua Wang, was born on April 27, 1992. Petitioner claimed that under China's family planning policies only legally married couples are permitted to have children, and as a result of these events he was ordered by the Chinese government to undergo a sterilization procedure. Petitioner subsequently fled to the United States in April 1994, apparently leaving Li and their child behind. He applied for asylum asserting that he had a well-founded fear of persecution. On April 16, 1997, the IJ denied petitioner's request for asylum, based on his lack of credibility. The BIA affirmed the IJ's decision on May 30, 2000, and, as the IJ had done, granted petitioner voluntary departure within 30 days of the Board's order. Petitioner apparently did not appeal the BIA's decision to this Court.

Wang never left the United States, opting instead to remain here well beyond the time he was told to depart. Four and a half years later, he filed the instant motion to reopen his deportation proceedings.[1] In those intervening four years, petitioner met and married Xiu Lan Wang, also a Chinese citizen. The couple had two children. In August 2003, Mrs. Wang was granted asylum. Unlike petitioner, however, there is no indication that she was ever previously denied asylum and ordered to leave the United States prior to having her children.

Petitioner bases his motion to reopen, which is filed well outside of the 90–day time limit provided in 8 C.F.R. § 1003.2(c)(2), on alleged changed conditions in China. Specifically, he asserts that a more severe Family Planning Law, enacted in China in 2002, was only recently implemented in his hometown. He claims that the new law increases, from mere economic sanctions to the imposition of

---

1. Although petitioner is, of course, primarily responsible for his unlawful actions, one cannot help but question why the Department of Homeland Security has failed to ensure petitioner's removal from the country. Despite the BIA's order of removal issued more than four years ago, petitioner was able to remain in the United States, marry, and father two children.

criminal penalties, the punishment of couples who have more than one child. Petitioner also asserts that a change in his own personal circumstances, namely the birth of his two children, will subject him to persecution in the form of forced sterilization upon his return to China. In support of this motion, petitioner offered, *inter alia*, the birth certificates of his two children born in the United States; an affidavit from Dr. Guang Wu ("Wu affidavit"), setting forth alleged incidents dating back to 1995 of forced sterilization being performed on Chinese citizens who gave birth to multiple children abroad; and an affidavit from Dr. John S. Aird ("Aird affidavit"), a retired U.S. Census Bureau demographer and immigration expert, discussing China's new Family Planning Law, including the treatment of Chinese couples who have had children abroad. The BIA denied petitioner's motion to reopen. Petitioner filed a timely petition for review in this Court.

## II. Discussion

■ We review the BIA's denial of a motion to reopen for abuse of discretion. *Kaur v. BIA,* 413 F.3d 232, 233 (2d Cir. 2005) (per curiam). While the BIA has "broad discretion" to grant or deny motions to reopen, *INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) (internal quotation marks omitted), "[a]n abuse of discretion may be found in those circumstances where the [BIA's] decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the [BIA] has acted in an arbitrary or capricious manner," *Ke Zhen Zhao v. U.S. Dep't of Justice,* 265 F.3d 83, 93 (2d Cir.2001) (citations omitted).

"The statutory framework governing asylum proceedings does not provide for motions to reopen or reconsider, and the right to make such motions depends entirely on the administrative regulations." *Kaur,* 413 F.3d at 234 (internal quotation marks omitted). "BIA regulations, in turn, provide that '[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.'" *Id.* (quoting 8 C.F.R. § 1003.2(c)(1)). Further, motions to reopen must be filed "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened," 8 C.F.R. § 1003.2(c)(2), unless the petitioner is able to establish "changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing," *id.* § 1003.2(c)(3)(ii).

■ Here, the BIA correctly held that the birth of petitioner's two children in the United States is evidence of his changed personal circumstances, as opposed to changed conditions in China. *See Li Yong Zheng v. U.S. Dep't of Justice,* 416 F.3d 129, 130 (2d Cir.2005) (per curiam) (holding that a change in personal circumstances, namely the birth of a child in the United States, does not fit under the changed circumstances exception provided by 8 C.F.R. § 1003.2(c)(3)(ii)); *see also Jian Huan Guan v. BIA,* 345 F.3d 47, 49 (2d Cir.2003) (noting that the birth of petitioner's two children in the United States following an order of deportation does not amount to changed country conditions). When considering the initial application of an asylum-seeker who has had

more than one child at the time of his initial application and may, therefore, be subject to forcible sterilization in his country of citizenship, the BIA has the discretionary authority either to grant the petition based upon the evidence presented or to find that the petitioner has failed to establish a well-founded fear of future persecution. *See, e.g., Jin Chen v. U.S. Dep't of Justice,* 426 F.3d 104, 111–12 (2d Cir. 2005); *see also* 8 U.S.C. § 1158(b) (establishing conditions for granting asylum). It is quite a different situation, however, where a petitioner is seeking to reopen his asylum case due to circumstances entirely of his own making after being ordered to leave the United States. In such a situation, it would be ironic, indeed, if petitioners like Wang, who have remained in the United States illegally following an order of deportation, were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities. This apparent gaming of the system in an effort to avoid deportation is not tolerated by the existing regulatory scheme. *See Doherty,* 502 U.S. at 323, 112 S.Ct. 719 ("Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.") (citation omitted). The law is clear that a petitioner must show changed country conditions in order to exceed the 90–day filing requirement for seeking to reopen removal proceedings. *See* 8 C.F.R. § 1003.2(c)(3)(ii). A self-induced change in personal circumstances cannot suffice.

On the issue of changed country conditions, the BIA had three pieces of evidence before it presented by petitioner's motion to reopen: the Wu affidavit, the Aird Affidavit, and the 2004 State Department Country Report for China. The Wu affidavit provides anecdotal evidence from 1995 of forced sterilizations being performed on the parents of children born outside of China. It appears that Dr. Wu, who himself had an asylum case pending before the BIA, left China in 1999, so it is unclear how his affidavit would ever be relevant to whether conditions in China have changed since that time. Even assuming that the acts described in the Wu affidavit occurred, they took place well before the BIA denied petitioner's initial application for asylum. The affidavit would thus form no basis to prove that conditions in China have changed since 2000. *See* 8 C.F.R. § 1003.2(c)(3)(ii) (requiring that motions to reopen be based on evidence that "is material and was not available and could not have been discovered or presented at the previous hearing"). The 2004 State Department Country Report for China indicates that there is no known national policy regarding the treatment of parents with children born in the United States. The Country Report states that although there have been reports of forced sterilizations in some rural areas, central government policy prohibits it. The Aird affidavit, dated September 30, 2004, offers evidence that seemingly contradicts the State Department Country Report with respect to petitioner's claim in this case. However, it was not prepared specifically for petitioner and is not particularized as to his circumstances. For that reason, its relevance is also limited.

Although the petitioner, when asserting changed country conditions, presented the BIA with this evidence, the BIA failed to discuss it in any particular detail in its decision denying the relief requested. Rather, the BIA tersely rejected petition-

er's assertion that conditions in China have changed, implicitly acknowledging the contents of petitioner's offerings, and ruling:

> The respondent's personal circumstances may have changed ... but he has not established that conditions in China have changed so that he has a reasonable fear of persecution. Nor does the evidence show that the respondent has a *prima facie* claim for relief pursuant to the Convention Against Torture, so we find no reason to remand on that basis. While the respondent may face a fine and harassment for having multiple children, we are not persuaded that he will face more severe punishment including, as he claims, forced sterilization.

■ Given the brevity of the BIA's decision on this point, questions arise as to its sufficiency. On the one hand, the BIA abuses its discretion if it fails completely to address evidence of changed country conditions offered by a petitioner. *See Poradisova v. Gonzales*, 420 F.3d 70, 81 (2d Cir.2005) ("IJs and the BIA have a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim. A similar, if not greater, duty arises in the context of motions to reopen based on changed country conditions."). Petitioner has presented evidence here, namely the Wu and Aird affidavits, purporting to indicate that conditions in China have changed since petitioner's initial application for asylum was rejected by the BIA in May 2000. The BIA should demonstrate that it has considered such evidence, even if only to dismiss it. *See Anderson v. McElroy*, 953 F.2d 803, 806 (2d Cir.1992) (noting that " 'the BIA's denial of relief can be affirmed only on the basis articulated in the decision ... and we cannot assume that the BIA considered factors that it failed to mention in its decision' ") (quoting *Mattis v. INS*,

774 F.2d 965, 967 (9th Cir.1985)). In so doing, the BIA should provide us with more than "cursory, summary or conclusory statements," so that we are able to discern its reasons for declining to afford relief to a petitioner. *Id.*

On the other hand, we do not hold, and in fact we reject any implication that *Anderson* so holds, that where the BIA " 'has given reasoned consideration to the petition, and made adequate findings,' " it must "expressly parse or refute on the record" each individual argument or piece of evidence offered by the petitioner. *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 160 n. 13 (2d Cir.2006) (quoting *Morales v. INS*, 208 F.3d 323, 328 (1st Cir.2000) (internal quotation marks omitted)). This is particularly true for evidence, such as the oft-cited Aird affidavit, which the BIA is asked to consider time and again. *See, e.g., Xue Bing Zhang v. Gonzales*, No. 04–4791, 2006 WL 190013, at *1 (2d Cir. Jan.25, 2006) (summary order) (noting that "Aird has studied and criticized China's population control policies for over 20 years, and has provided affidavits in more than 200 asylum cases since 1993"). While the BIA must consider such evidence, it may do so in summary fashion without a reviewing court presuming that it has abused its discretion. Given the evidence that was before it and the conclusion it reached in this case, it is clear that the BIA considered and rejected the evidence of changed country conditions that the petitioner presented and thus did not abuse its discretion.

■ Even if we were tempted to remand to the BIA here, finding that its limited analysis amounted to an abuse of discretion, we would not do so under the circumstances presented in this case because to do so would be futile. *See Xiao Ji Chen*, 434 F.3d at 162 ("The overarching test for deeming a remand futile ... is

when the reviewing court can 'confidently predict' that the [BIA] would reach the same decision absent the errors that were made.") (citing *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 395 (2d Cir.2005)). We can predict with confidence that a balancing of the 2004 Country Report against the Aird affidavit's criticism of that report, in addition to the temporally immaterial Wu affidavit would lead to the conclusion already reached, namely that petitioner has not shown he would face anything more than economic sanctions if returned to China.

### III.  Conclusion

For the foregoing reasons, we DENY the petition for review.