NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued December 12, 2006
Decided January 24, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-2300

| | | |
|---|---|---|
| XIU HUA DONG, | | Petition for Review of an Order of the |
| | *Petitioner,* | Board of Immigration Appeals |
| *v.* | | No. A77-651-880 |
| ALBERTO GONZALES, | | |
| | *Respondent.* | |

**O R D E R**

Xiu Hua Dong, a native and citizen of China, petitions for review of the denial of her third motion to reopen her asylum case. The Board of Immigration Appeals (BIA) concluded that, as relevant to this appeal, Dong had not submitted material evidence that conditions in China had changed so as to relieve her from the time and number restrictions on motions to reopen. On appeal, Dong argues that the BIA's conclusion is irrational in light of Chinese legislation from 2001 that, she says, has been enforced in her hometown only recently, and has led to more frequent forced sterilizations in China, particularly of persons like herself with more than one child. However, the evidence Dong submitted does not support her motion to reopen a removal proceeding, among other reasons, and thus we deny the petition for review.

**I.**

Dong, who hails from Fujian Province, entered the United States in 1997. She was later charged with removability on the ground that she entered the country on a Japanese passport and visa issued to someone else. Dong conceded removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture. She claimed that she was harassed by family planning officials in China for becoming pregnant out of wedlock. She did not appear at her scheduled asylum hearing, and in August 2001, the immigration judge (IJ) ordered her removed *in absentia*. Weeks later, she challenged the removal order in a motion to reopen, which was denied because she did not claim that she lacked notice of her hearing and did not demonstrate that her failure to appear was the result of exceptional circumstances. In July 2002, Dong filed another motion to reopen, alleging ineffective assistance of counsel. This motion, too, was denied in August 2003, because the BIA concluded that Dong did not comply with the requirements of *In re Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). Despite the order of removal, Dong stayed in the United States. She married another Chinese citizen in July 2002 and gave birth to a son in August 2004 and a daughter in November 2005.

In February 2006, Dong asked the BIA for the third time to reopen her case. She again alleged that she had received ineffective assistance of counsel around the time of her asylum hearing. She also maintained that conditions in China had changed so that she now faced an even greater likelihood of persecution under China's family planning policies. In support of this argument she submitted documents including the text of the Population and Family Planning Law ("PFPL"), a law enacted in December 2001 that, according to Dong, steps up enforcement of involuntary population control measures and has been implemented in her area only recently. She provided as well a transcript of Congressional testimony and an affidavit from 2004 by John Shields Aird, a retired demographer from the U.S. Census Bureau, which is frequently submitted by Chinese asylum applicants. Aird asserts that Chinese citizens who have children abroad are equally subject to population-control procedures, including forced sterilization, upon return to China. Dong also attached her children's birth certificates, a letter from her mother in Fujian discussing forced sterilizations there, State Department reports from 2003 and 2004, and American newspaper articles discussing population control in China.

The BIA was unpersuaded by Dong's arguments. Regarding the allegedly changed country conditions—the only subject of this appeal—the BIA concluded that the birth of Dong's two children simply constituted changed personal circumstances, which do not provide a basis for reopening a removal proceeding. The BIA also found that the remainder of the evidence Dong submitted did not establish that conditions in China had materially changed. Accordingly, the BIA denied Dong's motion, and she now petitions for review.

## II.

In general an alien may file one motion to reopen within 90 days of the BIA's decision. *See* 8 C.F.R. § 1003.2(c)(3)(ii). However, the normal restrictions do not apply if the motion to reopen is based on "changed circumstances arising in the country of nationality." *See id.* § 1003.2(c)(3)(ii). To support reopening on this ground, the alien must provide evidence that is "material and was not available and could not have been discovered or presented at the previous hearing." *Id.* We review the BIA's decisions on motions to reopen for abuse of discretion. *Pelinkovic v. Ashcroft*, 366 F.3d 532, 536 (7th Cir. 2004).

On appeal, Dong primarily contends that the BIA erred in concluding that she did not establish a change in country conditions because, she asserts, her evidence demonstrated that "forced abortions and sterilizations have been on the rise" in China since the passage of the PFPL December 2001. But that law, the text of which was attached to Dong's motion, is silent about sterilization as a method of enforcing population control. Moreover, the law was passed in late 2001, and Dong does not support her assertion that local officials have only recently enforced it. Her reliance on the PFPL, therefore, does not demonstrate changed conditions in China. The Aird affidavit likewise does not support the argument that population control measures are more oppressive now. We have already held that the affidavit, which relies on information from the 1990s, is not evidence of changed circumstances. *See Lin v. Gonzales*, 435 F.3d 708, 711 (7th Cir. 2006). Nor does the birth of Dong's children in the United States—years after she was ordered removed—reflect changed conditions. *See Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2006). We have stated that the birth of a child is a change in "personal circumstances" that does not trigger the statutory exception allowing additional, untimely motions to reopen. *Id.* at 407.

In fact, the only evidence that can be said to support Dong's assertion that circumstances have worsened is a letter—not an affidavit—from her mother, in which she informs Dong that two neighbors had recently been forced to undergo sterilization and states that "these kind of persecutions are common in our village since the enactment and implementation of the PFPL." Dong's mother also cautions, "If you were sent back to China, you would definitely be forced to take the sterilization as well." These unsworn and conclusory statements repeat Dong's assertion that the situation in China has changed, but provide little evidence. *See Zhao*, 440 F.3d at 407 (affidavit from petitioner's wife discussing "crackdown" on Falun Gong practitioners did not support finding of changed circumstances because at best it was cumulative evidence that same conditions persisted).

In a case with facts similar to those presented here, the Second Circuit persuasively reasoned that the petitioner had not established grounds for reopening.

*See Wang v. BIA,* 437 F.3d 270, 272-73 (2d Cir. 2006). In that case, a Chinese national sought to reopen his asylum case based on changed conditions, asserting that the PFPL was only recently implemented in his hometown but virtually assured his sterilization. *See id.* Like Dong, he relied on an Aird affidavit and affidavits from residents of China recounting incidents of forced sterilization. *Id.* at 273. Also like Dong, Wang had married and had children after being ordered removed, and he filed his motion to reopen years after that order. *Id.* at 274. The court, while taking issue with the BIA's cursory review of the evidence, held that the Board had not abused its discretion. *Id.* at 275. The court stated that a Chinese citizen's asylum application might well be granted if he had more than the allotted number of children and established that sterilization would likely occur if he were removed. *Id.* at 273-74. However, the court continued: "It is quite a different situation . . . where a petitioner is seeking to reopen his asylum case due to circumstances, entirely of his own making after being ordered to leave the United States." Such "gaming of the system," the court held, is not tolerable. *Id.* at 274.

Dong relies heavily on another case, *Guo v. Ashcroft*, 386 F.3d 556 (3d Cir. 2004), in which the Third Circuit reached a contrary result. The court held that the petitioner was entitled to reopening of her case because she demonstrated *prima facie* eligibility for asylum. *Id.* at 566. The "principal evidence" Guo submitted was an Aird affidavit, which, along with her testimony at her original asylum hearing, established a "reasonable likelihood" that Guo would be able to establish a well-founded fear of persecution. *Id.* at 565. However, in contrast to this court, the Third Circuit did not express any skepticism of the Aird affidavit's evidentiary value. For example, we have noted that "[m]ost of the sources that Aird relied upon . . . date back to the 1990s," so that the information was "available and reasonably discoverable" much earlier that the petitioner submitted it. *Lin,* 435 F.3d at 711. And in *Wang*, the Second Circuit noted that the Aird affidavit had limited relevance because it "was not prepared specifically for petitioner and is not particularized as to his circumstances." 437 F.3d at 274. Likewise, the affidavit Dong submitted does not discuss her particular case, a significant point where she argues specifically that the conditions in her hometown in particular have grown worse due to enforcement of the PFPL there. On balance, of the cases similar to Dong's, we find the reasoning in *Wang* more persuasive.

Finally, although Dong does not rely on it, we note that the Second Circuit has recently discussed the existence of certain evidence supporting changed country conditions in cases where asylum applicants from Fujian Province sought to reopen their claims premised on the one-child policy. In the first of these cases, [*Shou Yung*] *Guo v. Gonzales*, the applicant submitted evidence with her motion to reopen that, according to the court, supported the existence of an official policy of sterilizing individuals who violated the one-child policy. 463 F.3d 109 (2d. Cir. 2006). The applicant submitted a document entitled "Q & A for Changle City [Fujian] Family

Planning Information Handbook" that states "An IUD insertion is mandatory upon birth of first child; sterilization upon birth of second child." *Id.* at 113. In addition, 2003 decisions from the Changle City Family Planning Administration and the Fujian Province Department of Family Planning Administration stated that Chinese nationals who "engage in reproductive behavior overseas in violation of family planning regulations . . . shall be subject to family-planning enforcement upon resettlement in China." *Id.* The Second Circuit concluded that the BIA had abused its discretion by denying the alien's motion to reopen because the documents lent "powerful potential support to a finding of changed circumstances" and were "self-evidently material." *Id.* at 115. And in [*Tian Ming*] *Lin v. United States Dep't of Justice*, 368 F.3d 167 (2d Cir. 2006), the court noted that "the documents recently presented to this court in *Shou Yung Guo* . . . suggest that there may in fact be an official policy of forced sterilization in Fujian Province." Moreover, "these documents potentially undermine our continued reliance on the State Department reports." *Id.* at 168. While acknowledging that the documents might not be authentic, the court nevertheless remanded the case to allow the BIA to decide whether the *Shu Young Guo* documents establish an official policy of forced sterilization, and if so, whether Lin might face the procedure if removed. *Id.* The Second Circuit has since issued several unpublished decisions remanding cases to the BIA in light of the *Shu Young Guo* evidence. Whatever the impact of this evidence in those cases, however, Dong did not rely on it before the BIA or in this court.

## III.

Although evidence apparently exists that might support Dong's assertion that individuals in Fujian Province are sterilized for having more children than permitted by family planning policies, Dong herself did not rely on it. Instead she relies on the PFPL and insists that sterilizations have become more frequent in its wake, but for the reasons discussed earlier, her argument is unpersuasive. And, notably, Dong stayed in the United States long after the denial of her asylum claim, even getting married and having children after the BIA denied her first motion to reopen. As the Second Circuit reasoned in *Wang*, reopening Dong's case now would be tantamount to rewarding her for defying the BIA's orders to return to China and instead remaining in the United States to start a family. *See* 437 F3d. at 274. The petition for review is DENIED.