**YANQIN WU, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General,[1] Respondent.**

**No. 07–4309–ag.**

United States Court of Appeals, Second Circuit.

Sept. 25, 2008.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Acting Attorney General Peter D. Keisler as the respondent in this case.

Khagendra Gharti–Chhetry, Chhetry & Associates, P.C., New York, New York, for Petitioner.

Jesse Lloyd Busen, Trial Attorney, Office of Immigration Litigation (Aviva L. Poczter, Senior Litigation Counsel, on the brief), for Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. RICHARD C. WESLEY, Hon. PETER W. HALL, Hon. JOHN R. GIBSON,[2] Circuit Judges.

2. The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit,

*SUMMARY ORDER*

Petitioner YanQin Wu, a native and citizen of the People's Republic of China, seeks review of the September 6, 2007 order of the BIA reversing the September 8, 2005 decision of Immigration Judge ("IJ") Patricia Rohan granting her application for asylum. *In re YanQin Wu*, No. A97 391 412 (B.I.A. Sept. 6, 2007), *rev'g* No. A97 391 412 (Immig. Ct. N.Y. City Sept. 8, 2005). We assume the parties' familiarity with the underlying facts and procedural history in this case.

When the BIA does not adopt the decision of the IJ in any respect, this Court reviews only the decision of the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir.2005). We review the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Manzur v. U.S. Dep't of Homeland Sec.*, 494 F.3d 281, 289 (2d Cir.2007). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir.2005); *Tian–Yong Chen v. INS*, 359 F.3d 121, 127 (2d Cir.2004). We review de *novo* questions of law and the application of law to undisputed fact. *See Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir.2008).

■ Wu argues that the BIA erred when it reversed the IJ's grant of asylum on the grounds that she failed to establish the requisite nexus between the mistreatment that she allegedly suffered and a statutorily protected ground. She argues that she merited a grant of asylum be-

sitting by designation.

cause she demonstrated that the local governmental authorities persecuted her on account of her political opinion as expressed through her protests against governmental corruption.

In this case, the BIA properly found that the record did not support the IJ's conclusion that the local authorities persecuted Wu in order to prevent her from protesting the corruption of governmental officials and challenging the government's authority. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 545 (2d Cir.2005). As the BIA observed, the conflict between Wu and the village chief was a private economic dispute that arose from Wu's claims that the village chief cheated her family out of 10,000 RMB when he purchased their farmland. We have consistently rejected making a bright-line distinction between the economic and the political in political asylum cases, noting that what initially appears to be a purely economic dispute may also involve a political element and examining the political context of the dispute to determine whether it has a political, as well as an economic, dimension. *See Osorio v. INS,* 18 F.3d 1017, 1029 (2d Cir.1994).

To establish the existence of this political dimension, an applicant must demonstrate that her protest against corruption not only advanced her own economic interest but also constituted a challenge to a governing institution. *See Yueqing Zhang,* 426 F.3d at 547. However, Wu failed to demonstrate that, in confronting the village chief and attempting to sue him, she was not only seeking economic redress for herself but also challenging "the legitimacy and authority of the ruling regime itself." *See id.*

In her brief to this Court, Wu argues that her economic dispute with the village chief "graduated to political expression" when she persisted in attempting to sue him even after her first detention despite her awareness that she was unlikely to succeed in her efforts. She suggests that, because she did not expect to prevail against the village chief, her only possible motivation in continuing her protest was "looking for fairness and justice for her family and other [sic] who were also deceived by government officials." However, this argument is not supported by the record. When Wu's attorney asked her why she continued to challenge the village chief even though she had little hope of success and faced possible arrest, Wu replied that she simply wanted the 10,000 RMB and could think of no way to recover it other than suing the village chief. Thus, according to her own testimony, Wu protested the village chief's corruption in order to obtain an economic benefit for her family, not to launch a challenge against the legitimacy and authority of the village government. *See Yueqing Zhang,* 426 F.3d at 547.

In addition, Wu failed to submit sufficient evidence, whether direct or circumstantial, to establish that the village chief retaliated against her, even in part, on the basis of her political opinion. *See INS v. Elias–Zacarias,* 502 U.S. 478, 482, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Nothing in the record suggests that the village chief ordered Wu's arrest and detention for any other reason than to protect his own economic selfinterest and dissuade Wu from pursuing a course of legal action which, if successful, would leave him 10,000 RMB poorer. Indeed, according to Wu's own testimony, the village chief used his detentions of Wu for his own economic gain by demanding payments of 3000 RMB from her family in exchange for her release. There is no evidence that these payments from Wu's parents benefitted anyone other than the village chief or that he demanded these payments for any pur-

pose other than his own individual greed. *See Yueqing Zhang*, 426 F.3d at 548.

Wu argues that the BIA erred by ignoring evidence in the record establishing that the officials who mistreated her viewed her as "anti-government." In support of this argument, Wu points to statements that she made at her credible fear interview and in her asylum application that "they accused [her] of being against the government and the regime," and that if she returned to China the government would arrest her for filing a complaint against a government official because "[t]hey see [her] as an enemy of the government." However, Wu did not repeat these conclusory allegations during her hearing before the IJ, much less elaborate on or explain the basis for these statements during her testimony. Wu also argues that the background materials submitted in her case reveal "a pattern and practice of subjection and intolerance of any political dissent in China." However, Wu points to no specific facts or findings contained in the background materials to support this assertion.

Finally, Wu argues that the BIA erred by reversing the IJ's grant of asylum without specifically finding that the IJ's factual findings were in error. However, as the government points out, the BIA is not required to expressly address and analyze each piece of evidence submitted by an applicant on appeal. *See Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir.2006). Rather, while the BIA must consider all the relevant evidence, it may do so summarily without triggering concerns that it has abused its discretion as long as its findings are sufficient to reveal the reasoning underlying its determination. *See id.* In this case, the BIA's findings and its explanations of its reasoning make clear that it considered and rejected the factual findings of the IJ that Wu specifically mentions in her brief. *See*

*id.* Accordingly, the BIA did not err in rejecting the IJ's determination that Wu had established the requisite nexus to her political opinion or in explaining the reasoning behind its decision to reverse the IJ's grant of relief.

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot.