

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2009

# Gunawan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3365

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Gunawan v. Atty Gen USA" (2009). *2009 Decisions.* Paper 2073.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2073

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3365
_____

POLIEN S. GUNAWAN;
DJINAEDI NJOTOWIDJAJA,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98-586-373; A98-586-374)
Immigration Judge:  Honorable Miriam K. Mills

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 5, 2009
Before: SLOVITER, STAPLETON and COWEN, Circuit Judges

(Opinion filed: January 6,2009)
_____

OPINION
_____

PER CURIAM

Petitioners seek review of an order of the Board of Immigration Appeals ("BIA")

dismissing their appeal from the Immigration Judge's ("IJ") order of removal.  For the

following reasons, we will deny the petition for review.

Petitioners, Polien S. Gunawan and her husband, Djinaedi Njotowidjaja, are natives and citizens of Indonesia. They entered the United States in October 2003 as non-immigrant visitors for pleasure and remained in the country beyond their authorized date. In October 2005, Petitioners were served with a Notice to Appear charging them with overstaying their visas. See INA § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)]. Petitioners sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), claiming that they had been persecuted in the past, and feared persecution in the future, because they are Chinese Christians.

In support of their application, Gunawan submitted an affidavit describing her Christian upbringing and the hardships that she and her husband faced in Indonesia on account of their ethnicity and religion. Gunawan stated that her father is a pastor and founder of several Christian churches in East Java. Gunawan herself was raised as a Christian and has been very active in the Christian church throughout her life. In 1980, Gunawan married Njotowidjaja, who was also a member of the church. In September 2000, Gunawan and her family moved to Sapikerep, East Java, Indonesia, where her father was establishing a new church.

Once in Sapikerep, Gunawan's family began to encounter harassment from their Muslim neighbors. Gunawan recounted that, whenever they attended services at her father's church, the neighbors would broadcast Muslim music to drown out their prayers.

When Gunawan complained to the police, the police told her that there was nothing they could do to protect her family. Gunawan claimed that, in August 2002, her Muslim neighbors approached their home in the early morning and banged on tins and kettledrums to intimidate them. Later that month, a group of Muslims vandalized her father's church, destroying the altar and writing "Allah Akhbar" on the walls. The police told Gunawan that there was nothing they could do and advised the family to flee the area. The next day, Gunawan and her husband took their children and moved to Malang. Gunawan's father stayed in Sapikerep with his congregation.

Gunawan stated that, after moving to Malang, she and Njotowidjaja opened a small textile factory. In April 2003, one of their employees stole money from the factory, leaving the business "practically bankrupt." They reported the incident to the police, and were told that the theft would be investigated. Instead, the police began coming to their home periodically to demand money and household possessions. When Gunawan asked one of the officers why they were targeting her family, the officer said that it was because the "Chinese were all rich." According to Gunawan, her youngest son, who had heart problems, often cried when the officers came. Gunawan stated in her affidavit that her son died later that year from an "uncertain" cause. Soon thereafter, she and her family left for the United States.

At the removal hearing before Immigration Judge Miriam K. Mills, Petitioners relied on the statements that Gunawan made in her affidavit and declined to testify.

Petitioners submitted into evidence several reports on current conditions for Chinese Christians in Indonesia, including the 2004 Country Report on Human Rights Practices, the 2004 International Religious Freedom Report, and the affidavits of two expert witnesses, Jeffrey Winters and Jana Mason.

Following the hearing, IJ Mills found that the Petitioners had failed to establish either past persecution or a well-founded fear of future persecution. Accordingly, the IJ denied their applications for asylum, withholding of removal, and relief under the CAT. The BIA subsequently dismissed Petitioners' appeal. Gunawan and Njotowidjaja now seek review of the BIA's decision.

## II.

We have jurisdiction to review the BIA's order of removal under 8 U.S.C. § 1252(a)(1). When, as here, the BIA issues a decision on the merits and not simply a summary affirmance, this Court reviews the BIA's, not the IJ's, decision. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002). The BIA's conclusions regarding evidence of past persecution are findings of fact, and this Court therefore reviews these conclusions under the deferential substantial evidence standard. Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). This Court will not disturb the BIA's decision "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003).

## III.

In their petition for review, Petitioners first claim that the BIA violated their due process rights by failing to make an individualized determination of their case. Specifically, Petitioners allege that the BIA failed to review the 2004 State Department Reports and each of their expert witness affidavits. A review of the BIA's opinion, however, reveals that it clearly considered Petitioners' submissions. The BIA specifically addressed the 2004 State Department Reports in its analysis. Furthermore, although the BIA did not specifically discuss both of the expert affidavits, it is evident that the Board conducted a detailed review of the record before reaching its conclusion that Petitioners were not entitled to relief. Accordingly, we conclude that this claim is without merit. See Wang v. Bd. of Immig. Appeals, 437 F.3d 270, 275 (2d Cir. 2006) (internal quotation omitted) ("[W]here the BIA has given reasoned consideration to the petition, and made adequate findings," it is not required to "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner."); Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir.2001) (explaining that, to satisfy due process, the BIA must provide "sufficient indicia" that it made an individualized determination).

Next, Petitioners claim that the BIA erred in denying their applications for asylum. An applicant may demonstrate eligibility for asylum by showing either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158. To establish past persecution, an applicant must show: "(1) one or more

5

incidents rising to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed either by the government or by forces that the government is either unable or unwilling to control." Toure v. Att'y Gen., 443 F.3d 310, 316-17 (3d Cir. 2006) (quoting Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003)). Our definition of persecution is narrow; it includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). Thus, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id.

To establish a "well-founded fear" of future persecution, an applicant must show both a "subjectively genuine fear of persecution and an objectively reasonable possibility of persecution." Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006). To satisfy the objective prong, an applicant must show that she would be individually singled out for persecution, or that there is a "pattern or practice" of persecution of similarly situated persons. 8 C.F.R. § 208.12(b)(2)(iii)(A). To qualify as a "pattern or practice," the persecution must be "systemic, pervasive, or organized." Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005).

In this case, Petitioners attempted to demonstrate eligibility for asylum by showing both past persecution and a well-founded fear of future persecution. Upon review of the record, we conclude that substantial evidence supports the BIA's finding that Petitioners

6

failed to demonstrate eligibility on either basis. With respect to their claim of past persecution, the BIA correctly concluded that none of the incidents described above is sufficiently severe to rise to the level of persecution under the INA. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) ("[O]ur cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution."); Lie, 396 F.3d at 536 (holding that "two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, [are] not sufficiently severe to be considered persecution").

We also conclude that substantial evidence supports the BIA's finding that Petitioners failed to prove that they have a well-founded fear of future persecution, as they failed to establish either that they face an individualized risk of persecution, or that there is a "pattern or practice" of persecution of Chinese Christians in Indonesia. See 8 C.F.R. § 208.13(b)(2)(iii)(A). Petitioners did not present any evidence that they would be singled out for persecution if forced to return to Indonesia. Moreover, as the BIA explained, the fact that Gunawan's father has remained in Indonesia without meeting harm undercuts her argument that she reasonably should fear returning to Indonesia. See Lie, 396 F.3d at 537 (holding that the reasonableness of a petitioner's fear of future persecution is diminished when family members remain in the petitioner's native country without meeting harm).

Substantial evidence also supports the BIA's finding that Petitioners failed to show

7

that there is a pattern or practice of persecution of Chinese Christians in Indonesia. To support their claim, Petitioners primarily relied on the 2004 Country Report on Human Rights Practices and the 2004 International Religious Freedom Report. We recently held, however, that these reports do not document a pattern or practice of persecution of ethnic Chinese Christians in Indonesia. See Wong v. Attorney General, 539 F.3d 225, 234 (3d Cir. 2008) ("Although the 2003 and 2004 State Department reports document ongoing harassment of Chinese Indonesians and isolated incidents of anti-Christian violence, . . . the reports do not indicate that such violence is widespread or systemic."). Petitioners argue that the BIA failed to give sufficient weight to their expert affidavits in addressing this issue. We have reviewed those documents, however, and cannot conclude that they show that there currently is "systemic, pervasive, or organized" persecution against Chinese Christians in Indonesia. Lie, 396 F.3d at 537.[1] Therefore, we find that the BIA acted within is discretion in choosing to give greater weight to the State Department's own assessments.

---

[1]Petitioners submitted a 2005 report by Dr. Jeffrey Winters, a Northwestern University professor specializing in human rights in Indonesia, who opined that Chinese Christians face increased risks in Indonesia due to "worsening country conditions, a societal failure to deal with racism against ethnic Chinese, instabilities and weaknesses in the government's legal and security apparatus, and a marked increase in Islamic fundamentalism that has resulted in outbursts of violence." (A.R. 000152.) Petitioners also submitted an affidavit by Jana Mason, Deputy Director for Government Relations at the International Rescue Committee, who attested to widespread acts of violence committed against Christians in Indonesia. (A.R. 000160.) As stated above, we do not believe that these reports show that there currently is "systemic, pervasive, or organized" persecution against Chinese Christians in Indonesia. Lie, 396 F.3d at 537.

Given that Petitioners have failed to establish either past persecution or a well-founded fear of future persecution, the BIA correctly determined that they necessarily failed to meet the higher burden required for withholding of removal. See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 348-49 (3d Cir. 2008). The BIA also correctly determined that Petitioners did not meet the criteria for relief under the CAT because they failed to establish that it was more likely than not that they would be tortured if removed to Indonesia. See 8 C.F.R. § 208.16(c)(2).[2]

IV.

For the foregoing reasons, we will deny the petition for review.

---

[2] Petitioners' remaining arguments are without merit and do not warrant further discussion.

9