

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2009

# Liu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3159

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Liu v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1493.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1493

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3159
_____

MEI FANG LIU,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A78-840-583)
Immigration Judge: Honorable Henry S. Dogin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 22, 2009

Before: RENDELL, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Filed: April 23, 2009)
_____

OPINION OF THE COURT
_____

PER CURIAM

Mei Fang Liu petitions for review of the Board of Immigration Appeals' ("BIA")

order denying her motion to reopen. For the following reasons, we will grant her petition.

I.

Ms. Liu is a native and citizen of China. She arrived in the United States in 2001 and applied for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"), but ultimately proceeded only on a claim under CAT that she feared torture for having left China illegally. The Immigration Judge denied that claim and ordered her removal to China, and the BIA affirmed on June 10, 2003. Liu did not petition for review.

Liu remained in this country, began a relationship with another native and citizen of China, and gave birth to two children, the second of whom was born in 2006. In 2007, she filed a motion with the BIA to reopen her proceeding on the grounds that the birth of her second child would subject her to China's coercive family planning policy. In particular, she claimed that circumstances had changed in her home province of Fujian because authorities had begun counting foreign-born children for purposes of China's so-called "one child" policy and that she would be targeted for forced sterilization because of the birth of her second child. Liu supported this claim, inter alia, with nine pieces of evidence that we deem relevant for purposes of our disposition.[1] By order issued June 19,

[1]They are: (1) a 2003 Fujian Province Administrative Decision (A.53-54); (2) a May 22, 2003 Changle City Family Planning Administration Administrative Opinion (A.56-57); (3) a July 1999 "Q &A for Changle City Family Planning Information Handbook" (A.62-64); (4) a December 27, 2005, Communist Party Official Directive (A.67-68); (5) an undated "method for implementation of Lian Jiang County's Birth Control Regulations" (A.74); (6) a November 17, 1997 General Office of the National Population and Family

(continued...)

2007, the BIA denied Liu's motion. Liu petitions for review.

## II.

## A.

We have jurisdiction under 8 U.S.C. § 1252. We review the BIA's denial of reopening for abuse of discretion, and may not disturb its ruling unless it was "'arbitrary, irrational, or contrary to law.'" Zheng v. Att'y Gen., 549 F.3d 260, 264-65 (3d Cir. 2008) (citation omitted). Because Liu filed her motion more than 90 days after her final order of removal, she was required to show that it was "'based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered'" and evidence that is "'material and was not available and could not have been discovered or presented at the previous hearing.'" Id. (quoting 8 C.F.R. § 1003.2 (c)(3)(ii)). In addition, the BIA may deny a motion to reopen if it fails to make out a prima facie case for relief. See id. at 265.[2]

---

[1](...continued)
Planning Commission directive regarding the treatment of United States-born children (A.77); (7) an October 12, 1997 Ministry of Public Security directive regarding the same (A.78-79); (8) newspaper articles from 2002 and 2005, respectively, regarding forced and threatened abortions in China (A.83-84, 87-88); and (9) a 2003 affidavit of John Shields Aird with supporting documentation (A.91-197).

[2]Liu initially argued that she was entitled to file a successive asylum application regardless of whether she could satisfy these requirements. In her supplemental brief, however, she concedes that this argument is foreclosed by Ying Liu v. Attorney General, 555 F.3d 145, 150-52 (3d Cir. 2009), and has withdrawn it. Liu also initially argued that, even if successive asylum applications are subject to the restrictions placed on motions to reopen, successive applications for withholding of removal and relief under CAT are not.

(continued...)

B.

In Zheng, we recently granted two petitions for review filed by Chinese nationals who had filed motions to reopen similar to the motion at issue here. Like Liu, those petitioners had been ordered removed but later had more than one child in the United States and sought reopening on the basis of heightened enforcement of family planning policies in Fujian province. Also like Liu, they supported their motions with multiple pieces of evidence. In each case, however, the BIA denied the motion without so much as mentioning that evidence, let alone providing a reasoned explanation for why it did not find the evidence persuasive. See id. at 268-69, 70-71. For that reason, we vacated each order and remanded for the BIA to "make a more complete analysis of the evidence [petitioners] submitted." Id. at 272.

The BIA's order in this case suffers from the same deficiencies and requires the same result. The BIA concluded that reopening was not warranted both because Liu had not made out a prima facie case and because she had not shown that conditions in China had changed. As with the petitioners in Zheng, however, the BIA neither mentioned nor discussed any of Liu's evidence. Instead, it merely cited earlier decisions, including Matter of J-W-S-, 24 I. & N. Dec. 185 (BIA 2007), and Matter of C-C-, 23 I. & N. Dec.

---

²(...continued)
Liu does not claim that this argument survives our decision in Ying Liu and has not otherwise renewed it, but we do not reach the issue because Liu did not raise the argument before the BIA. See Lin v. Att'y Gen., 543 F.3d 114, 120 (3d Cir. 2008).

899 (BIA 2006), and concluded that the "evidence he [sic] has submitted" is not "persuasive of his [sic] claim." (BIA Order at 2.) Thus, as in Zheng, the BIA's order consists of a "series of conclusory statements, and fails to offer even a cursory review of the record." Zheng, 549 F.3d at 271.[3]

The Government attempts to distinguish Zheng on the basis of differences between the evidence the petitioners had submitted in that case and the evidence that Liu submitted in this one. As the Government correctly notes, we remanded in Zheng in part because the evidence the petitioners offered was not at issue in J-W-S- or C-C-, and the BIA's mere citation of those opinions thus did not indicate that it actually had considered that evidence. See id. at 268-69, 270 n.7. Three of Liu's pieces of evidence, by contrast, were discussed in J-W-S- (though in the context of a different evidentiary presentation).

But, even assuming that the BIA's mere citation of J-W-S- in Liu's case indicates that it adequately considered these three pieces of evidence, that leaves six other pieces of evidence that the BIA did not discuss. The Government argues that three of those pieces pre-dated Liu's removal hearing and thus did not provide a proper basis for reopening.

_____

[3]Throughout its order, the BIA incorrectly referred to Ms. Liu in the masculine. The Government blames this mistake on Liu's counsel, who did the same in portions of the motion to reopen. On the very first page of that motion, however, counsel made clear that Liu is in fact a woman and that her claim is based on her having given birth to two children. (A.10.) Even if he had not, the BIA's failure to ascertain Liu's gender is troubling. Whether or not Liu's gender is relevant to her claim, which we leave to the BIA to decide in the first instance, the BIA's failure to ascertain her gender reinforces our inability to conclude that it gave her evidence the consideration it was due.

5

See 8 C.F.R. § 1003.2(c)(1). Though we see no record evidence on this issue other than the documents' dates, that may well be the case. The BIA, however, did not deny reopening on that ground and did not address whether any particular evidence was previously available. Accordingly, the BIA must make that determination in the first instance. See Konan v. Att'y Gen., 432 F.3d 497, 501 (3d Cir. 2005) ("[A] reviewing court is powerless to decide in the first instance issues that an agency does not reach."). See also Zheng, 549 F.3d at 264-65 (remanding where BIA failed to discuss, inter alia, evidence that pre-dated one petitioner's final order of removal).

The Government also argues that the remaining three pieces of evidence, which it concedes are both "new" and previously unconsidered by the BIA, are "essentially identical" to other evidence considered in J-W-S- because they contain similar information. These pieces of evidence are the December 27, 2005 Communist Party Official Directive (A.67-68), which the Government argues echoes the 1999 Changle City Q & A booklet (A.62-64), and two newspaper articles containing reports of forced abortions (A.83-84, 87-88), "isolated examples" of which the Government contends the BIA was aware in J-W-S-. As in Zheng, however, the BIA simply did not have this evidence before it when it decided J-W-S-. In particular, it did not discuss the 2005 Communist Party Official Directive, which states that, effective January 1, 2006, foreign-born children "without exception, should be included in our town's family planning goal" and that "women with reproductive age, who meet the 'IUD Insertion' standards, shall be

6

inserted with the IUD.  For those who [are] pregnant out of the plan, shall be aborted. One party of the couple shall be sterilized if the nature of the violation is very serious." (A.68.)  We reject the Government's suggestion that the BIA should be deemed to have considered this evidence in Liu's case merely because it arguably echoes a 1999 document that the BIA considered, in a different evidentiary context, in J-W-S-.

Finally, the Government argues that Liu submitted no "personal evidence," as did the petitioners in Zheng, that the record before the BIA here was otherwise less extensive than in Zheng, and that, consequently, it was proper for the BIA to dispose of Liu's motion without engaging in the analysis we required in Zheng.  See Zheng, 549 F.3d 269 n.6 (distinguishing the Second Circuit's affirmance of a cursory BIA decision in Wang v. BIA, 437 F.3d 270 (2d Cir. 2006), on the basis of "the more extensive record in this case").  Our decision in Zheng, however, did not turn on the presentation of "personal," as opposed to "background," evidence.  See id. at 268 (explaining that the BIA has "'a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his'" or her claim) (citation omitted).  Nor did our decision in Zheng purport to establish some minimum evidentiary threshold for requiring the BIA to expressly discuss a petitioner's evidence.  See id. 268.  We acknowledge that Liu's showing here is less substantial than the petitioners' in Zheng.  As in that case, however, Liu submitted far more evidence than in Wang, 437 F.3d at 274 (discussing the "three pieces of evidence" before the BIA), and, we think, evidence sufficiently substantial that

7

the BIA should at least have acknowledged and discussed it.

Accordingly, we will grant the petition for review, vacate the BIA's order, and remand for further proceedings consistent with this opinion and our decision in Zheng. As we did in Zheng, we emphasize that our ruling is based solely on "the procedural shortcomings that we find existed in the BIA proceedings, and thus we do not imply that the BIA reached an incorrect result predicated on the records before it[.]" Zheng, 549 F.3d at 272.