**FONG CHEN, Petitioner,**

**v.**

Michael B. MUKASEY,* Attorney General, and Board Of Immigration Appeals, Respondents.

No. 06–1010–ag.

United States Court of Appeals, Second Circuit.

Nov. 28, 2007.

See also 490 F.3d 180.

Henry Zhang, Zhang and Associates, P.C., New York, NY, for Petitioner.

Paul Naman, Assistant United States Attorney, for Matthew D. Orwig, United States Attorney for the Eastern District of Texas, Beaumont, TX (on submission), for Respondents.

PRESENT: Hon. WALKER, Hon. GUIDO CALABRESI, Circuit Judges, Hon. DENISE COTE, District Judge.**

## SUMMARY ORDER

Petitioner Fong Chen, a native and citizen of the People's Republic of China, seeks review of a February 27, 2006 order of the BIA denying his motion to reopen. *In re Fong Chen,* No. A 72 483 714 (B.I.A. Feb. 27, 2006). In the motion, Chen asked the BIA to reopen its June 29, 1995 order, which had affirmed the January 31, 1995 decision of Immigration Judge ("IJ") Patricia A. Rohan denying the petitioner's applications for asylum and withholding of removal. *In re Fong Chen,* A 72 483 714 (B.I.A. June 29, 1995), *aff'g* No. A 72 486 714 (Immig. Ct. N.Y. City Jan. 31, 1995). The BIA denied Chen's motion as untimely. *In re Fong Chen,* No. A 72 483 714 (B.I.A. Feb. 27, 2006). Previously, we issued an opinion in this case remanding it to the BIA for further consideration of documents in the record. *See Fong Chen*

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

** The Honorable Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

*v. Gonzales,* 490 F.3d 180 (2d Cir.2007). However, we placed a hold on the opinion shortly after filing because the BIA had issued an opinion that appeared material to our remand order. After further consideration, and as discussed more fully below, we find that a remand is still appropriate. Although we have detailed some of the procedural history and facts of the case in order to explain our remand, we assume the parties' familiarity with the rest of the underlying facts and procedural history of the case.

We review a denial of a motion to reopen for abuse of discretion. *Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). An abuse of discretion may be found when the BIA's decision "provides no rational explanation . . . or contains only summary or conclusory statements." *Ke Zhen Zhao v. U.S. Dep't of Justice,* 265 F.3d 83, 93 (2d Cir.2001). Furthermore, "IJs and the BIA have a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on his claim." *Shou Yung Guo v. Gonzales,* 463 F.3d 109, 115 (2d Cir.2006) (internal quotation marks and citation omitted).

In order for his untimely motion to reopen to be considered, *see* 8 C.F.R. § 1003.2(c)(2), Chen was required to show, through evidence that was not available or obtainable at the previous hearing, a change in *country* conditions arising in China, *see* 8 C.F.R. § 1003.2(c)(3)(ii). The BIA, in denying Chen's motion, found that Chen had failed to make such a showing, because (1) his alleged changed *personal* circumstances did not meet the requirements for an untimely motion to reopen filed pursuant to 8 C.F.R. § 1003.2(c)(3)(ii); and (2) while Chen had submitted, in support of his motion, corroborative affidavits of three female relatives who claimed to have been sterilized in China for having violated the family planning policies, this evidence would, at most, only establish "the 'continued' implementation of policies rather than a material change in policies." *In re Fong Chen,* No. A 72 483 714 (B.I.A. Feb. 27, 2006).

### I. Issue One on Remand: The Guo documents and the Affidavits

Our prior opinion remanding the instant case to the BIA was largely based on our reasoning in *Shou Yung Guo v. Gonzales,* 463 F.3d 109 (2d Cir.2006). In *Guo,* we discussed three documents (collectively the "*Guo* documents") that "apparently reflect[ ] the adoption of a new policy in Changle City," in the Fujian Province of the People's Republic of China. *Id.* at 114. Two of the documents, purported 2003 decisions from the Changle City Family–Planning Administration and the Fujian Province Department of Family–Planning Administration ("2003 decisions"), stated, in effect, that foreign-born children will be counted for purposes of determining violations of the one-child policy, and that Chinese nationals who have children abroad will be treated the same as those who have children in China.[1] The third document,

---

1. *See id.* at 113 (" '[W]here either parent remains a Chinese national and citizen with no permanent residence overseas, any child of such a couple . . . is deemed a Chinese national and shall not be treated as [a] foreign national or citizen for domestic administrative purposes.' " (second alteration and omission in original) (quoting alleged 2003 decision of Changle City Family–Planning Administration)); *id.* (" '[N]o exception or waiver shall be applicable to Chinese nationals and citizens who engage in reproductive behavior overseas in violation of family-planning regulations as enforced in his or her area of residence of household registration in China. . . . Such Chinese nationals and citizens shall be subject to family-planning enforcement upon resettlement in China.' " (alteration and omission in original) (quoting alleged 2003 decision of Fujian Province De-

dated 1999 and entitled "Q & A for Changle City Family–Planning Information Handbook" ("Q & A Handbook"), purported to indicate that, at least in Changle City, the birth of a second child would result in sterilization. *Id.* at 113. In *Guo,* we remanded so that the BIA could determine the veracity of the documents, and, if they were valid, consider their effect on Guo's petition. *Id.* at 115. In the instant case, petitioner submitted with his motion to reopen copies of the two 2003 decisions. But he did not also submit a copy of the Q & A Handbook, the third *Guo* document. Nevertheless, consistent with *Guo,* our earlier opinion in this case remanded to the BIA for it to consider the effect of the 2003 decisions on petitioner's case and make clear the reasoning behind its decision.

But, on June 7, 2007, virtually concomitantly with the issuance of our earlier opinion in this case, *see Fong Chen v. Gonzales,* 490 F.3d 180 (2d Cir.2007), the BIA issued opinions in *In re J–W–S–,* 24 I. & N. Dec. 185 (B.I.A.2007) and *In re J–H–S–,* 24 I. & N. Dec. 196 (B.I.A.2007). In *In re J–W–S–,* the BIA considered the two 2003 decisions and noted the existence of the Q & A Handbook. 24 I. & N. Dec. at 192–93. In *In re J–H–S–,* the BIA took notice of all three of the *Guo* documents. 24 I. & N. Dec. at 201–02. In both decisions, the BIA rejected the petitioners' claims of a well-founded fear of persecution in China reasoning that, even if the three *Guo* documents show that there is a policy of sterilization in the Fujian province, they do not prove that the policy is enforced through physical coercion as opposed to economic sanctions. *See id.* at 203 ("[T]here is no indication that the court's reference is to a policy of forcible sterilization, as opposed to China's well-documented system of offering incentives

partment of Family–Planning Administra-

to obtain compliance with birth control limits."); *In re J–W–S–,* 24 I. & N. Dec. at 193–94 ("At most, the evidence contained in the record of proceedings suggests that the applicant and his wife may face 'sanctions and penalties....' The evidence, however, fails to establish that any sanctions ... would rise to the level of persecution."). Thus, in both cases the BIA held that even if the *Guo* documents are authentic, they do not show that China's policy of sterilization, if any, would result in enforcement efforts that would amount to persecution.

Because Chen is from Changle City in the Fujian Province of China and because the two 2003 decisions (but not the Q & A Handbook) were included in the record before the BIA, the BIA decisions in *In re J–H–S–* and *In re J–W–S–* are material to petitioner's appeal. Yet although they are material, they are not dispositive of this case. While the BIA held in *In re J–W–S–* and *In re J–H–S–* that the *Guo* documents by themselves do not show that sterilization policies are implemented through physical force, petitioner here offers more evidence than the two 2003 decisions. He has supplied detailed affidavits of various family members attesting to the use of force in their own sterilizations in the Fujian Province. Thus, on the one hand, Chen may be able to show that the *Guo* documents, when coupled with his family members' affidavits, are sufficient to establish that sterilization is enforced through physical coercion and, therefore, that Chen has produced evidence of changed country conditions. On the other hand, the BIA could permissibly rule that petitioner's evidence is insufficient to show the use of force. We of course take no position on that question. But because the BIA decision here did not mention the

tion)).

presence of the 2003 decisions in the record, and because to our knowledge the BIA has never considered a case in which the record contains both the two 2003 decisions and detailed affidavits of family members living in the Fujian province attesting to forced sterilization, we remand to the BIA to consider in the first instance whether, under these circumstances, petitioner has produced evidence of changed country conditions. *See Gonzales v. Thomas,* 547 U.S. 183, 186–87, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006).

## II. Issue Two on Remand: Personal Circumstances

We also note a second issue on remand that the BIA must address if it is to grant the motion to reopen. Petitioner's motion to reopen—which he filed over ten years after the BIA's and IJ's denial of his applications for asylum and withholding of removal—stated that "he is now married, is the parent of two United States citizen sons, and fears that he will suffer persecution in his country for violating China's population control law." Specifically, on June 5, 2002, while he was still in the United States, albeit several years after he was ordered to depart, Chen was married. The marriage then produced two children, one on December 26, 2003, and the other on August 25, 2005.

These events raise the question of whether, if the BIA determines that the 2003 decisions, when combined with the affidavits of Chen's family members, establish changed country conditions, petitioner's motion to reopen could have been denied on the ground that his children were born *after* he had been ordered to depart. The panel in *Guo* appears to have left this question open. *See Guo,* 463 F.3d at 115 ("[Petitioner] had given birth to a child in China prior to filing her application for asylum in 1993, and gave birth to a

second child in 1995 after arriving in the United States, *but before being ordered to depart in 1996.* Therefore, [petitioner] appears to fall in the category of persons described in the documents." (emphasis added)).

The government argues that our holding in *Wei Guang Wang v. BIA,* 437 F.3d 270 (2d Cir.2006), requires the BIA's denial of Chen's untimely motion to reopen in this case. *See id.* at 274 ("[W]here a petitioner is seeking to reopen his asylum case due to circumstances entirely of his own making after being ordered to leave the United States .... it would be ironic, indeed, if petitioners like Wang, who have remained in the United States illegally following an order of deportation, were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities. This apparent gaming of the system in an effort to avoid deportation is not tolerated by the existing regulatory scheme."). But in *Wang,* we held solely that "[a] self-induced change in personal circumstances cannot *suffice.*" *Id.* at 274 (emphasis added). We did not have before us the possibility of changed country conditions. Because we rejected the petitioner's evidence of changed country conditions, all that was left in that case were changed personal circumstances. We therefore had no occasion to consider the issue raised here, namely, whether a petitioner with both changed personal circumstances and changed country conditions (if indeed changed *country* conditions are found to have occurred) can rely on those changed country conditions to reopen his case, despite an untimely motion, when the underlying change in personal circumstances postdated his order to depart.

This question appears to be an open one. And because the BIA has yet to address it,

**578**

we decline to consider it now. *See INS v. Orlando Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."); *see also Ucelo–Gomez v. Gonzales,* 464 F.3d 163, 168–70 (2d Cir.2006).

### III. Instructions on Remand

On remand, the BIA should consider all the evidence in the record, including the two 2003 decisions and the affidavits of Chen's family members, and specifically answer the following questions: (1) whether the 2003 decisions together with the affidavits support a finding of changed country conditions; and (2) whether Chen's changed conditions support reopening, given that they derive from changed personal circumstances (the birth of two children in the United States) that occurred after Chen's departure was ordered.

For the foregoing reasons, our previous opinion and mandate in this case is hereby superseded by this order, the petition for review is GRANTED, the decision of the BIA is VACATED, and the case REMANDED for further proceedings consistent with this order.