UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1853

XUE YAN LIN,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued: January 29, 2009                 Decided: May 6, 2009

Before MICHAEL, KING, and AGEE, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** Gary Jay Yerman, YERMAN & ASSOCIATES, L.L.C., New York,
New York, for Petitioner. Jem Colleen Sponzo, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON
BRIEF:** Jeffrey S. Bucholtz, Acting Assistant Attorney General,
Civil Division, M. Jocelyn Lopez Wright, Assistant Director,
Office of Immigration Litigation, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Xue Yan Lin, a native and citizen of the People's Republic of China, petitions for review of the August 14, 2007 decision of the Board of Immigration Appeals (the "BIA"), denying his motion to reopen immigration proceedings. Lin maintains that changed country conditions in China, combined with the birth of his two children in the United States, justified a reopening — after approximately nine years — of his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (the "CAT"). As explained below, we deny the petition for review.

I.

A.

After illegally entering the United States on October 27, 1991, Lin filed an application for asylum and withholding of deportation,[1] asserting that he had experienced past persecution and had a well-founded fear of future persecution in China, predicated on his resistance to the country's communist leadership and his participation in the 1989 demonstrations at Tiananmen Square. Lin was issued a notice to appear on February

_____

[1] After Lin filed his 1992 application for withholding of deportation, applicable statutory changes replaced the term "deportation" with a procedure designated as "removal."

2

23, 1994, alleging that he was deportable for entering the United States without inspection. An immigration judge (the "IJ"), in a decision issued on February 21, 1997, denied Lin's application for relief and found him deportable (the "IJ Decision").[2] The IJ Decision granted Lin's request to depart voluntarily from the United States, however, and ordered that he do so by May 21, 1997.

Lin appealed the IJ Decision to the BIA, which summarily dismissed his appeal on February 17, 1998. Lin failed to seek judicial review of the BIA's rejection of his appeal, and instead remained unlawfully in the United States. On February 25, 2003, Lin married a lawful permanent resident of this country, and the couple now has two children (both United States citizens): a son born in January 1997 (prior to the IJ's Decision), and a daughter born in August 2005.

B.

On March 16, 2007, more than nine years after the BIA's February 1998 dismissal of his appeal of the IJ Decision, Lin submitted a motion to the BIA to reopen his deportation proceedings, seeking to file a successive application for asylum, withholding of removal, and protection under the CAT

---

[2] The IJ Decision is found at J.A. 7-15. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

(the "Motion to Reopen"). Lin asserted therein that his immigration proceedings should be reopened by the BIA because previously unavailable evidence established a change in country conditions in China — particularly the increased enforcement of family planning policies in the Fujian Province. Lin also asserted he has a well-founded fear of persecution in China because of the births of his two children, in violation of that country's family planning policies, and that, if he returns to China, he will be subjected to involuntary sterilization.

In support of his Motion to Reopen, Lin submitted to the BIA his affidavit; an affidavit from his father, who lives in Fujian Province; an amended application for asylum and for withholding of removal, and supporting affidavit; Lin's and his wife's birth certificates; their marriage certificate; his wife's green card; birth certificates of their two children; and family photographs. In addition to the foregoing personal evidence, Lin submitted other materials in support of the Motion to Reopen.[3]

---

[3] The supporting materials filed with the Motion to Reopen, in addition to personal evidence spelled out above, included a Policy Statement from China's Administrative Office of the National Population and Family Planning Committee; a 1999 question and answer sheet issued by the Changle City Family Planning Office, addressing China's family planning policy; demographer John Aird's September 2002 testimony before the Congressional-Executive Commission on China; the May 2003 Consular Information Sheet on China; the 2004, 2005, and 2006 (Continued)

4

By its decision of August 14, 2007, the BIA denied the Motion to Reopen (the "BIA Decision").[4] In so ruling, the BIA decided that the Motion to Reopen was untimely because it was filed more than ninety days after the BIA's February 1998 dismissal of Lin's appeal of the IJ Decision, and that the motion did not otherwise fall under the statutory exception for changed country conditions. The BIA Decision also concluded that Lin had failed to make a prima facie showing of a well-founded fear of persecution if he returned to China, because "he has not shown a reasonable likelihood that he would be subject to more than fines and loss of any government job." BIA Decision 2. Lin thereafter filed his petition for review with this Court, and we possess jurisdiction pursuant to 8 U.S.C. § 1252.

---

Department of State Country Reports on China; a 1997 policy letter issued by China's Department of Public Security; the 2005 and 2006 annual reports of the Congressional-Executive Commission on China; the December 2004 testimony of Harry Wu, Executive Director of the Laogai Research Foundation, before the House of Representatives Committee on International Relations; and two newspaper articles reporting human rights violations arising from enforcement of China's family planning policy.

[4] The BIA Decision is found at J.A. 162-63.

We review for abuse of discretion the BIA's denial of a motion to reopen, but assess de novo the legal rulings made by the BIA in connection therewith. INS v. Doherty, 502 U.S. 314, 323-24 (1992); Barry v. Gonzales, 445 F.3d 741, 744 (4th Cir. 2006). We may only reverse the BIA's denial of a motion to reopen if its ruling was arbitrary, capricious, or contrary to law. Afanwi v. Mukasey, 526 F.3d 788, 794 (4th Cir. 2008) (citing Doherty, 502 U.S. at 323-24). A BIA decision on such a motion "is reviewed with extreme deference, given that motions to reopen 'are disfavored . . . [because] every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" Barry, 445 F.3d at 744-45 (quoting Stewart v. INS, 181 F.3d 587, 595 (4th Cir. 1999)).

III.

A.

In this proceeding, Lin seeks review of the BIA Decision denying his Motion to Reopen his application for asylum, withholding of removal, and protection under the CAT.[5] The

---

[5] Lin does not seek review of the BIA's 1998 dismissal of his appeal of the IJ Decision. Indeed, we lack jurisdiction to assess the propriety of that dismissal because Lin failed to timely petition for review. See 8 U.S.C. § 1252(b)(1) (providing that petition for review be filed within thirty (Continued)

provisions of § 240(c)(7) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1229a(c)(7), apply to an alien who has been ordered removed from this country and thereafter seeks to reopen his removal proceedings. Generally, such an alien may file a single motion to reopen and that motion must be filed within ninety days of the entry of the final order of removal. See 8 U.S.C. § 1229a(c)(7)(A), (C)(i); 8 C.F.R. § 1003.2(c)(2). These statutory time and numerical limitations are inapplicable, however, and no time limit is imposed on a motion to reopen "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii); see also 8 C.F.R. § 1003.2(c)(3)(ii).[6] To proceed under the changed-country conditions exception to the statutory time limit, an applicant

_____

days); Stone v. INS, 514 U.S. 386, 405 (1995) (explaining such thirty-day period is "jurisdictional in nature and must be construed with strict fidelity").

[6] The changed-country conditions exception provided for in 8 U.S.C. § 1229a(c)(7)(C)(ii), and which, if applicable, results in no time limit being applicable to a motion to reopen, states:

> There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for [asylum] and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if [the supporting] evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

7

must present evidence of changed country conditions that "is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); see also 8 C.F.R. § 1003.2(c)(3)(ii). Furthermore, "[a] motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). In addition to identifying the previously unavailable evidence, an applicant seeking to utilize the changed-country conditions exception must demonstrate his prima facie eligibility for asylum, that is, he must demonstrate that the new evidence would likely alter the result of his case. See INS v. Abudu, 485 U.S. 94, 104-05 (1998); Onyeme v. INS, 146 F.3d 227, 234 (4th Cir. 1998).

In this situation, we are obliged to reject Lin's petition for review if the BIA Decision denied his Motion to Reopen on any valid ground. In that respect, the Supreme Court has identified "at least" three grounds on which the BIA is entitled to deny such a motion to reopen:

- The applicant's failure to introduce "previously unavailable, material evidence";

- Failure of the applicant to establish "a prima facie case for the underlying substantive relief sought"; and

- A determination by the BIA that even if these two requirements were satisfied, "the movant would

8

> not be entitled to the discretionary grant of relief."

See Abudu, 485 U.S. at 104-05 ("There are at least three independent grounds on which the BIA may deny a motion to reopen."); see also INS v. Doherty, 502 U.S. 314, 323 (1992) (same); Zhang v. Mukasey, 543 F.3d 851, 854 (6th Cir. 2008) (same); Onyeme, 146 F.3d at 234 (same).

## B.

As heretofore explained, the Motion to Reopen, filed by Lin on March 16, 2007, was untimely under the applicable statute unless it falls under the changed-country conditions exception, where no time limit exists. Lin has acknowledged as much, but maintains that the ninety-day time limit was excused because the changed country conditions in China authorized the relief he sought. The BIA Decision denied the Motion to Reopen by relying on the first two of the three bases identified by the Supreme Court — first, that Lin had failed to establish a change in country conditions because he had only alleged a change in personal conditions, and did not otherwise establish any changed country conditions in China; and, second, that even if a change in country conditions was shown, he had nonetheless failed to make a prima facie showing of a well-founded fear of persecution.

On the question of whether the country conditions in China had changed since the earlier proceedings, the BIA Decision first found that to "the extent the motion is based on the changes in personal circumstances" — the birth of Lin's children in the United States — such personal circumstances are insufficient to support a motion to reopen. BIA Decision 2. Second, the BIA Decision ruled that Lin had not persuasively shown that the country conditions in China had changed, because his evidence established only "a continued implementation of policies rather than a material change in policies." Id. Predicated thereon, the BIA concluded that Lin had not persuasively shown that his Motion to Reopen fell within an exception to the otherwise applicable ninety-day statutory deadline.

On the issue of changed personal circumstances, the BIA and the Attorney General have mischaracterized the Motion to Reopen as relying on such circumstances. In fact, the Motion to Reopen specified to the contrary — specifically seeking to reopen "in light of a change of conditions in China." J.A. 29. Certainly, the birth of Lin's children is a significant factor with respect to his Motion to Reopen, because the possibility that he might suffer persecution arises therefrom. And, as we recently recognized, changed personal circumstances arising in the United

States — such as the birth of children — do not <u>alone</u> authorize a successive asylum application, and do not otherwise constitute the changed country conditions justifying an exception to the ninety-day statutory deadline. See Zheng v. Holder, No. 08-1255, \_\_\_ F.3d \_\_\_ (4th Cir. Apr. 16, 2009). Notwithstanding these observations, however, the BIA has not ruled that changed personal circumstances — when a change in country conditions otherwise exists — precludes it from granting a motion to reopen. Rather, changes in personal circumstances, if accompanied by sufficient evidence of changed country conditions, may support an otherwise untimely motion to reopen. See Chen v. Mukasey, 255 F. App'x 573, 577-78 (2d Cir. 2007) (unpublished) (observing that "whether a petitioner with both changed personal circumstances and changed country conditions . . . can rely on those changed country conditions to reopen his case, despite an untimely motion, when the underlying change in personal circumstances postdated his order to depart," is an open question).

On the issue of changed country conditions, Lin's petition for review finds support in a recent decision of the Eleventh Circuit, Li v. U.S. Attorney General, 488 F.3d 1371 (11th Cir. 2007). In Li, the Eleventh Circuit considered evidence strikingly similar to that presented in this proceeding, and concluded that the evidence was material and "clearly satisfied

the criteria for a motion to reopen." 488 F.3d at 1375. Nevertheless, whether Lin's evidence was sufficient to establish a change in country conditions is a close question. Compare Shao v. Mukasey, 546 F.3d 138, 169 (2d Cir. 2008) (drawing "distinction between changes in the substance and in the enforcement of China's population control policy"), with Li, 488 F.3d 1371. Notably, the BIA does not contend that Lin's evidence was previously available; and such evidence appears to postdate his initial IJ hearing. If we were to conclude that Lin's evidence established a change in country conditions, however, his petition for review would yet be unsuccessful if the BIA was correct in ruling that Lin had failed to make a prima facie showing for the relief sought. Because, as explained below, Lin did not make a prima facie showing, we need not decide whether the Motion to Reopen sufficiently established a change in country conditions.

2.

As explained above, Lin seeks asylum, withholding of removal, and relief under the CAT, asserting that, if he is returned to China, he will face persecution because he has violated China's family planning policy by having two children in the United States. In order to be eligible for asylum, Lin must establish refugee status based on either his past persecution in China, or a well-founded fear of persecution

12

there, on a protected ground. See 8 C.F.R. § 1208.13(b). Because Lin does not assert, in support of his Motion to Reopen, that he suffered past persecution in China,[7] he must — in order to be accorded relief — establish a well-founded fear of future persecution on one of the statutorily-enumerated grounds. See Lin-Jian v. Gonzales, 489 F.3d 182, 187 (4th Cir. 2007); 8 C.F.R. § 208.13(b).

A sterilization is deemed to be persecution, and "a person who has a well founded fear that he or she will be forced to undergo such a procedure . . . shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42)(B). As we have explained, the "well-founded fear of persecution" statutory mandate contains both subjective and objective components. Ngarurih v. Ashcroft, 371 F.3d 182, 187 (4th Cir. 2004). To satisfy its subjective

---

[7] In his initial proceedings before the IJ, Lin claimed that he suffered past persecution in China as a result of his political resistance and participation in the Tiananmen Square demonstration. The IJ, however, found Lin's testimony regarding past persecution to be "replete with inconsistencies" and lacking corroboration. IJ Decision 2. Because Lin did not seek judicial review of this adverse credibility finding, it is not now contestable. This finding cannot, however, be used to discredit Lin's testimony on all issues. See Lin-Jian v. Gonzales, 489 F.3d 182, 191 (4th Cir. 2007) (explaining that despite adverse credibility finding regarding petitioner's subjective fear of future persecution, IJ made no credibility findings regarding petitioner's past persecution, and therefore IJ was "essentially silent" on petitioner's credibility on that issue).

13

component, an applicant must present "candid, credible, and sincere testimony demonstrating a genuine fear of persecution." Id. In order to prevail on the objective component, the applicant is obliged to offer "specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution." Id. at 187-88.

In support of his Motion to Reopen, Lin presented both personal and background evidence. Specifically, Lin's affidavit reported that friends and family in China had advised that "the government has increased the use of forced abortions and sterilization." J.A. 50. Lin's father, who lives in Fujian Province, reported that, in the prior year, family planning laws had been "more strictly carried out in [Changle City, Fujian Province]." Id. at 79. Lin's father gave two examples in which couples having more than two children were forcibly sterilized, concluding that "[e]xamples like these are very common in my hometown." Id. Lin's father also reported that the village committee in Changle City was aware that Lin had two children and that "[i]f he returned to China, he had to undergo necessary Family Planning procedures, such as sterilizations, unless he became a U.S. citizen." Id. Lin also submitted objective background evidence with his Motion to Reopen, such as Department of State Country Reports on China, in order to

14

bolster his anecdotal evidence and establish an increase in China's enforcement measures.

The BIA Decision rejected Lin's evidence, ruling that Lin had failed to make a prima facie case of a well-founded fear of persecution. The BIA recognized that "[Lin] reports he is known to have two children," but nevertheless concluded that "he has not shown a reasonable likelihood that he would be subject to more than fines and loss of any government job." BIA Decision 2. The BIA then ruled that the fact that "local officials in some areas of China have insisted upon sterilization does not establish that [Lin] has a reasonable fear of being forcibly sterilized, especially if his wife and children remain here." Id.

Put simply, the BIA did not err in concluding that Lin had failed to carry his burden on the well-founded fear of persecution question. The BIA did not reject Lin's claim of subjective fear of persecution, ruling only that Lin had failed to satisfy the objective component of the statutory mandate. In so ruling, the BIA relied on its own precedential decisions, where it had already evaluated much of the background evidence submitted and relied upon by Lin. See BIA Decision 2 (citing Matter of S-Y-G-, 24 I. & N. Dec. 247 (BIA 2007); In re J-W-S-, 24 I. & N. Dec. 195 (BIA 2007); In re C-C-, 23 I. & N. Dec. 899 (BIA 2006)); see also Shao v. Mukasey, 546 F.3d 138 (2d Cir.

15

2008) (denying petitioners' petitions for review in above cases). Importantly, the BIA has observed that enforcement efforts in Fujian Province have been "lax," "uneven," and subject to "wide variation." In re J-W-S-, 24 I. & N. Dec. at 193-94. Moreover, in ruling on Lin's claim, the BIA relied on precedent recognizing a "lack of national policy with respect to foreign-born children," and explaining that violators of that policy are, at worst, subject to fines. BIA Decision 2 (citing Huang v. I.N.S., 421 F.3d 125, 129 (2d Cir. 2005)).

The BIA, having previously considered much of the evidence submitted and relied on by Lin, was entitled to address such evidence in a summary fashion. See Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006) (observing BIA must not "expressly parse or refute" each individual argument or piece of evidence, particularly evidence "which the BIA is asked to consider time and again"). Indeed, the BIA was entitled to find that the personal evidence offered by Lin fails to satisfy his burden of establishing the objective element of the fear of persecution issue. Lin's and his father's affidavits provide anecdotal evidence only, and they are otherwise uncorroborated. See Zheng v. Mukasey, 546 F.3d 70, 72 (1st Cir. 2008) ("Absent substantiation, self serving affidavits from petitioner and her immediate family are of limited evidentiary value."). In sum, after carefully assessing this record, we cannot conclude that

16

the BIA's determination that Lin failed to establish a well-founded fear of persecution was either arbitrary, capricious, or contrary to law.  As a result, the BIA did not abuse its discretion in denying Lin's Motion to Reopen.[8]

IV.

Pursuant to the foregoing, we deny Lin's petition for review of the BIA's denial of his Motion to Reopen.

PETITION FOR REVIEW DENIED

---

[8] The burden of proof for withholding of removal is greater than for asylum.  Thus if an applicant is ineligible for asylum, he is necessarily ineligible for withholding of removal.  See Camara v. Ashcroft, 378 F.3d 361, 367 (4th Cir. 2004).  Because Lin has failed to make a prima facie showing that he is eligible for asylum, he is also unable to establish that he is eligible for withholding of removal.  Similarly, Lin's claim for CAT relief lacks merit because this claim also relies on the probability of forcible sterilization.  To be eligible for relief under the CAT, Lin must demonstrate "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2).  On this record, we cannot conclude that the BIA erred in concluding that Lin did not meet his burden of proof on the CAT claim.