

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2007

# Anandarajah v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3538

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Anandarajah v. Atty Gen USA" (2007). *2007 Decisions.* Paper 34.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/34

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3538
_____

JULIAN RAJANAYAGAN ANANDARAJAH,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A97 302 954)
Immigration Judge:  Eugene Pugliese
_____

Submitted Under Third Circuit LAR 34.1(a)
October 25, 2007

Before:  FISHER, STAPLETON and COWEN, *Circuit Judges*.

(Filed:  December 19, 2007 )

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Julian Rajanayagan Anandarajah, a native and citizen of Sri Lanka, petitions for review of an order of the Board of Immigration Appeals (BIA) affirming the decision of the Immigration Judge (IJ) to deny his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the reasons that follow, we will deny the petition.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Anandarajah joined the Sri Lankan Navy in 1977 and was posted on land until July 1983, when he was transferred to a naval ship. While on deck, his co-workers accused him of being a member of the Liberation Tigers of Tamil Eelam (LTTE) minority and threatened to throw him overboard. Anandarajah fled and went to speak with the ship's captain about the incident, but no formal action was taken. Anandarajah contends that he became fearful of his co-workers, and he went Absent Without Leave (AWOL) in September 1984 by deserting the navy and gaining employment in Saudi Arabia.

In 1991, the company which Anandarajah alleges he worked for in Saudi Arabia closed down, so he returned to Sri Lanka. Upon arrival at the airport, he alleges that he was detained by Sri Lankan investigators and handed over to the Sri Lankan Navy for

2

being a deserter. He also alleges that thereafter, he was kept in a detention camp and accused of being a member of the LTTE, until a court martial was conducted and Anandarajah was sentenced to six months in jail.

In 1992, Anandarajah was again taken into custody by Sri Lankan police and questioned about the death of a Sri Lankan naval officer. The police beat him, accusing him of having information on the assassination. After four days' detention, he was released due to efforts by his father and a church reverend. As a result, Anandarajah decided to leave the country, but was detained by Sri Lankan police once more. He was beaten for eighteen days before his father obtained an attorney, bribed police officers, and secured his release on the condition that he report to the police station every Sunday. Instead, Anandarajah fled to Tunisia, then Sicily, then Germany, where he sought to obtain refugee status, but was denied. Then, Anandarajah traveled to Canada to seek asylum, but was denied there, too.

In March 2004, he entered the United States and was soon charged as inadmissible and subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). As a result, Anandarajah applied for asylum, withholding of removal, and protection under the CAT. During a hearing on February 4, 2005, the IJ determined that Anandarajah was subject to removal and denied his claims for relief. The BIA adopted and affirmed the decision of the IJ and dismissed Anandarajah's appeal. The instant petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252. "Because the BIA affirmed and adopted the IJ's opinion, we review the decisions of both the BIA and the IJ." *Luciana v. Attorney Gen.*, 502 F.3d 273, 279 (3d Cir. 2007). We uphold their findings of fact and adverse credibility determinations so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006). Factual findings "are conclusive unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Ilchuk v. Attorney Gen.*, 434 F.3d 618, 621 (3d Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)). Finally, we review de novo claims of a violation of due process. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595-96 (3d Cir. 2003).

III.

Anandarajah advances multiple arguments. First, he argues that the numerous inconsistencies between his asylum applications in the United States and Canada and his testimony before the IJ were insufficient to sustain the IJ's adverse credibility determination. Second, Anandarajah argues that the IJ's analysis of his CAT claim constituted legal error. Third, he contends that he was deprived of due process because the IJ was biased and so denied him a full and fair hearing.

First, Anandarajah argues that the IJ's adverse credibility determination was not supported by substantial evidence. We disagree. The IJ found numerous inconsistencies

among the various documents submitted, between the documents and Anandarajah's testimony at the hearing, and even between statements he made at the same hearing. For example, Anandarajah testified that he gave the LTTE money because the LTTE asked him for money. However, he also testified that he personally never gave the LTTE any money; his father was the only one who did as the head of the family. In addition, the IJ found numerous inconsistences between his Canadian application for asylum and his United States application, including the following:

(1)     the Canadian application states that his navy vessel co-workers attempted to kill him in August 1984, whereas his United States application lists the date as August 1983;
(2)     the Canadian application alleges that while he was in Saudi Arabia, on separate occasions the Sri Lankan Navy harassed his family, and Sri Lankan armed forces beat his wife, whereas neither of these allegations appears in his United States application;
(3)     the Canadian application states that he sent his wife money to purchase vans to open a transport business in 1987, whereas his United States application does not mention any involvement with a bus business until 1991; and
(4)     numerous other statements made in the Canadian application are omitted from his United States application.

Also, Anandarajah's United States written application indicates that when he was arrested and sentenced in Sri Lanka in 1991, he had already been detained for seven months, so he was released without a jail term. However, he testified at his hearing that he was sentenced to six months and also served six months, with no mention of any credit for time served. Further, Anandarajah's application states that he was in Tunisia for two months, whereas he testified at his hearing that he was in Tunisia for two weeks.

5

Accordingly, the IJ had substantial evidence to determine that all of these inconsistencies, taken together, suggest that Anandarajah's testimony was not credible and that they go to the heart of his claim, which is required for asylum applications filed on or before May 11, 2005. *See Chukwu v. Attorney Gen.*, 484 F.3d 185, 189 (3d Cir. 2007); *Mudric v. Attorney Gen.*, 469 F.3d 94, 101 (3d Cir. 2006) ("When an IJ denies an asylum claim based in part on an adverse credibility determination, . . . we review that determination to ensure that it was appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony." (internal quotation marks omitted)). Further, the IJ found that Anandarajah's demeanor contributed to the conclusion that he was not credible. *See Dia v. Ashcroft*, 353 F.3d 228, 252 n.23 (3d Cir. 2003) (en banc) (typically, IJ's reliance "on her personal observations of [applicant]'s demeanor or any other observations [is something] to which we must accord an even greater degree of deference"). For all of these reasons, the IJ did not improperly deny Anandarajah asylum on the basis of an adverse credibility finding.

Because Anandarajah is unable to establish his eligibility for asylum, his claim for withholding of removal also fails. *Mudric*, 469 F.3d at 102 n.8. Although Anandarajah is correct that his application for CAT relief must be analyzed separately, *see Zubeda v. Ashcroft*, 333 F.3d 463, 476 (3d Cir. 2003), in this case the adverse credibility finding is dispositive because the alleged facts on which the applicant bases the CAT claim are the

6

same as those underlying the asylum application. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 188 (3d Cir. 2003).

Finally, Anandarajah argues that the IJ was biased because he took into consideration the fact that Anandarajah had come before tribunals in other countries seeking asylum; Anandarajah contends that as a result, he was denied a full and fair hearing. Applicants have the "right to a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf." *Jarbough v. Attorney Gen.*, 483 F.3d 184, 192 (3d Cir. 2007). To establish a violation of due process, an applicant "must show substantial prejudice." *Id.*

We conclude that Anandarajah was not denied due process. He himself introduced his Canadian application for asylum and the record of those proceedings as a part of the record for the instant proceedings, so it was not improper for the IJ to consider such evidence. The remarks of the IJ with regard to the former proceedings therefore do not establish that Anandarajah was denied a "full and fair hearing." *See Abdulrahman*, 330 F.3d at 596 (finding that, even where the IJ went "beyond the bounds of propriety to make some additional and problematic generalized assertions . . . in the context of the record as a whole there is insufficient evidence to conclude that the overall proceedings were biased in violation [the applicant's] right to due process").

IV.

For the foregoing reasons, we will deny the petition for review.

7