OPINION OF THE COURT
PER CURIAM.
Petitioner Julian Rajanayagan Anandarajah is a 52-year old ethnic Tamil and citizen of Sri Lanka. He was born on January 14, 1957, is married, and has two children, one of whom lives in the United States. He is educated and fluent in Tamil, English and Sinhala. Anandarajah filed an application for asylum and withholding of removal based on race, nationality, political opinion, and membership in a particular social group, and he sought protection under the Convention Against Torture. We previously summarized his claim as follows:
Anandarajah joined the Sri Lankan Navy in 1977 and was posted on land until July 1983, when he was transferred to a naval ship. While on deck, his coworkers accused him of being a member of the Liberation Tigers of Tamil Eelam (“LTTE”) minority and threatened to throw him overboard. Anandarajah fled and went to speak with the ship’s captain about the incident, but no formal action was taken. Anandarajah contends that he became fearful of his coworkers, and he went Absent Without Leave (AWOL) in September 1984 by *668 deserting the navy and gaining employment in Saudi Arabia.
In 1991, the company which Anandarajah alleges he worked for in Saudi Arabia closed down, so he returned to Sri Lanka. Upon arrival at the airport, he alleges that he was detained by Sri Lankan investigators and handed over to the Sri Lankan Navy for being a deserter. He also alleges that thereafter, he was kept in a detention camp and accused of being a member of the LTTE, until a court martial was conducted and Anandarajah was sentenced to six months in jail.
In 1992, Anandarajah was again taken into custody by Sri Lankan police and questioned about the death of a Sri Lankan naval officer. The police beat him, accusing him of having information on the assassination. After four days’ detention, he was released due to efforts by his father and a church reverend. As a result, Anandarajah decided to leave the country, but was detained by Sri Lankan police once more. He was beaten for eighteen days before his father obtained an attorney, bribed police officers, and secured his release on the condition that he report to the police station every Sunday. Instead, Anandarajah fled to Tunisia, then Sicily, then Germany, where he sought to obtain refugee status, but was denied. Then, Anandarajah traveled to Canada to seek asylum, but was denied there, too.
Anandarajah v. Att’y Gen. of U.S., 258 Fed.Appx. 495, 496 (3d Cir.2007).
On February 4, 2005, an Immigration Judge found Anandarajah removable and denied his applications for relief. The IJ ruled that Anandarajah did not provide clear or credible testimony, had shown no nexus between any alleged harm and a ground protected by the statute, and had not met his burden of proof. The IJ expressed concern about Anandarajah’s claim, finding that he was neither candid nor forthright and that much of his testimony was intentionally vague and misleading. A.R. 312. The IJ found that his demeanor gave the impression that he was “avoid[ing] getting pinned down to any one particular position.” A.R. 313. The IJ took into account that Anandarajah had been through the asylum process in two other countries (Germany and Canada), and yet was vague about the details of his case. Given the cumulative effect of numerous inconsistencies, the IJ determined that Anandarajah’s credibility was fatally undermined.
Alternatively, the IJ concluded that nothing Anandarajah allegedly suffered at the hands of either the LTTE or the Sri Lankan military was on account of a ground protected by the statute. A.R. 318. The IJ found no evidence that there would be any interest in Anandarajah eleven years after he left Sri Lanka, because he claimed no political affiliation, and the IJ found no credible evidence that the government attributed any political association to him. A.R. 320. The IJ also noted the existence of a cease-fire agreement between the Sri Lankan government forces and the LTTE. A.R. 320-21. The IJ ordered Anandarajah removed to Sri Lanka.
On July 6, 2006, the Board of Immigration Appeals adopted and affirmed the IJ’s decision, concluding that Anandarajah’s testimony was not credible. Anandarajah filed a petition for review of this decision, which we denied, concluding that substantial evidence supported the IJ’s determination. See Anandarajah, 258 Fed.Appx. 495. We reasoned that:
The IJ found numerous inconsistencies among the various documents submitted, between the documents and Anandarajah’s testimony at the hearing, and even between statements he made at the *669 same hearing. For example, Anandarajah testified that he gave the LTTE money because the LTTE asked him for money. However, he also testified that he personally never gave the LTTE any money; his father was the only one who did as the head of the family. In addition, the IJ found numerous inconsistencies between his Canadian application for asylum and his United States application, including the following: (1) the Canadian application states that his navy vessel co-workers attempted to kill him in August 1984, whereas his United States application lists the date as August 1983; (2) the Canadian application alleges that while he was in Saudi Arabia, on separate occasions the Sri Lankan Navy harassed his family, and Sri Lankan armed forces beat his wife, whereas neither of these allegations appears in his United States application; (3) the Canadian application states that he sent his wife money to purchase vans to open a transport business in 1987, whereas his United States application does not mention any involvement with a bus business until 1991; and (4) numerous other statements made in the Canadian application are omitted from his United States application. Also, Anandarajah’s United States written application indicates that when he was arrested and sentenced in Sri Lanka in 1991, he had already been detained for seven months, so he was released without a jail term. However, he testified at his hearing that he was sentenced to six months and also served six months, with no mention of any credit for time served. Further, Anandarajah’s application states that he was in Tunisia for two months, whereas he testified at his hearing that he was in Tunisia for two weeks.
Id. at 497.
On March 31, 2008, Anandarajah filed an untimely motion to reopen removal proceedings with the Board, see 8 C.F.R. § 1003.2(c), claiming that persecution of Tamils in Sri Lanka had intensified, a pattern or practice of such persecution had emerged, and he was now eligible for relief as a failed asylum seeker who has lived in the West. Relying on the 2007 State Department Country Report on Human Rights Practices for Sri Lanka and other documentary evidence, Anandarajah contended that, with the election of President Mahinda Rajapaksa in 2005, there had been a breakdown in the enforcement of the 2002 Cease-Fire Accord between government security forces and the LTTE, resulting in greater persecution of ethnic Tamils. In the Jaffna peninsula in particular, killings of young Tamil males take place on a daily basis and are perpetrated by military intelligence units or associated paramilitaries. Anandarajah also contended that, because he does not have a passport, he will be detained at the Columbo airport and interrogated by Sri Lankan police. There it will be revealed that he is a failed Tamil asylum seeker. Government security forces will assume that he was sympathetic to the LTTE while in the West, and so he will be tortured and harmed.
On June 25, 2008, the Board denied the motion to reopen as untimely filed under 8 C.F.R. § 1003.2(c)(2) (providing for a 90-day deadline), and concluded that Anandarajah did not adequately demonstrate meaningfully changed conditions in Sri Lanka so as to qualify for an exception to the 90-day deadline. The Board concluded that conditions in Sri Lanka were similar to what they were at the time of the February 4, 2005 merits hearing before the IJ, and, in fact, Anandarajah’s claim was based, in part, on events that happened before he left Sri Lanka in 1994. The general increase in violence was not *670 enough to constitute changed conditions within the meaning of the regulation governing the exception to untimely motions to reopen. Moreover, the information Anandarajah submitted did not show a new pattern or practice of persecution of Tamils. The Board reasoned that Anandarajah no longer fits the profile of a young male Tamil, and he was not required to live in the north or east of Sri Lanka, where much of the violence is taking place. Anandarajah’s argument that he would be persecuted as a failed asylum seeker was new and not the result of changed conditions in Sri Lanka.
Anandarajah has timely petitioned for review of the Board’s final order denying his motion to reopen. We previously granted him a stay of removal.
We will deny the petition for review. We have jurisdiction under INA § 242(a), 8 U.S.C. § 1252(a). The Board’s jurisdiction arose under 8 C.F.R. § 1003.2(c), which grants it authority to adjudicate motions regarding matters it has previously considered. We review the Board’s denial of a motion to reopen for abuse of discretion. Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). Under this deferential standard of review, we will not disturb the Board’s decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir.2004).
Although a motion to reopen “must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened,” 8 C.F.R. § 1003.2(c)(2), this time limitation does not apply if the alien seeks reopening “based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.” 8 C.F.R. § 1003.2(c)(3)(h). See also 8 U.S.C. § 1229a(c)(7)(C)(ii). Because Anandarajah’s motion was untimely, being more than a year and a half late, his motion had to be based on changed country conditions for ethnic Tamils in Sri Lanka. See 8 U.S.C. § 1229a(c)(7)(C)(ii).
Anandarajah has argued in his brief that the Board erred in analyzing changed country conditions, failed to distinguish between incidents of civil war and persecution, erred in concluding that there was no new pattern or practice of persecution of Tamils, and mischaracterized his failed asylum seeker claim by failing to adequately consider that the Sri Lankan government now considers all Tamils who have lived in the West to be LTTE sympathizers.
We conclude that the Board did not abuse its discretion in refusing to excuse the untimeliness of Anandarajah’s motion to reopen based on changed conditions in Sri Lanka. 8 C.F.R. § 1003.2(c)(3)(ii). Anandarajah’s motion to reopen was based on the breakdown of the cease-fire accord between the government and the LTTE, which occurred after his merits hearing had concluded. He contends in his brief that with the resumption of the war came an increase in persecution of all Tamil males in Sri Lanka. See Petitioner’s Brief, at 7. His evidence, however, does not make out a prima facie case of persecution. Although Anandarajah has shown that there has been a breakdown in the cease-fire agreement leading to increased military activity in Sri Lanka’s civil war, the Board in our view did not abuse its discretion in concluding that the resumption of the war alone was not enough to warrant reopening removal proceedings. The standard for persecution is high and does not include harsh conditions shared by many *671 persons during a civil war. See Ambartsoumian v. Ashcroft, 388 F.3d 85, 93 (3d Cir.2004).
Anandarajah’s evidence shows that Sri Lanka is a dangerous country caught up in a civil war rooted in a long-running conflict between the Sinhalese government and the Tamil Tiger secessionist movement.[1] The Country Report is full of examples of violence between Sri Lankan security forces and the LTTE, as well as armed paramilitary groups linked to both the government and the LTTE. A.R. 43-44. Persons known or suspected of supporting either faction, including persons of Tamil ethnicity, have been victimized by the hostilities, and, in many cases, the perpetrators of specific incidents of violence are unknown. Id. at 44 (“A culture of impunity enabled paramilitaries to operate, often against civilians suspected of being LTTE sympathizers.”).
Thus, there is ample support for Anandarajah’s assertion that the violence has intensified in Sri Lanka, but he failed to demonstrate that circumstances in Sri Lanka have changed in regard to his claim that he will be persecuted or tortured. His new evidence does not show that he faces a significantly greater personal risk of persecution or torture — as opposed to violence from war — than he did at the time of his merits hearing. For example, in his motion to reopen filed with the Board, Anandarajah emphasized the statement in the 2007 Country Report that the “overwhelming majority of victims of human rights violations ... were young male Tamils,” A.R. 15, but Anandarajah is even more removed now from that group in terms of age than he was at the time of his 2005 merits healing.
Anandarajah argues that, even if he has not shown that he might be singled out individually for persecution or torture, he qualifies for relief on a pattern or practice theory. See Petitioner’s Brief, at 10. Moreover, he need only make out a prima facie case for relief, Guo, 386 F.3d at 563. The regulations provide that an alien need not show that he will be singled out individually for persecution if he “establishes that there is a pattern or practice in his or her country of nationality ... of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 C.F.R. § 208.13(b)(2)(iii)(A). In Sevoian v. Ashcroft, 290 F.3d 166 (3d Cir.2002), we explained that “the prima facie case standard for a motion to reopen ... requires the applicant to produce objective evidence showing a ‘reasonable likelihood’ that he can establish [that he is entitled to relief].” Id. at 175.
Anandarajah contends that his background materials, including the 2007 Country Report and the December 2006 UNHCR Report, demonstrate that there is a pervasive, organized, and systematic campaign to target Tamils as an ethnic group.[2] We conclude, however, that the Board properly applied the prima facie test and did not abuse its discretion in concluding that Anandarajah’s background materials do not make a prima facie showing of a pattern or practice of persecution of Tamils in Sri Lanka. Establishing that the Sri Lankan government has targeted the LTTE as part of a military objective is not tantamount to establishing that it has targeted all Tamil males for persecution or torture. “The standard for showing a pattern or practice is high because it relieves the individual alien of presenting evidence *672 that he in particular would likely experience persecution if returned to his country and in theory would entitle everyone else from his country who belongs to the protected group to asylum in the United States.” See Mitreva v. Gonzales, 417 F.3d 761, 765 (7th Cir.2005). See also Sioe Tjen Wong v. Att’y Gen. of U.S., 539 F.3d 225, 233 (3d Cir.2008) (citing Mitreva with approval).
Recently, the Seventh Circuit Court of Appeals addressed the December 2006 UNHCR Report in Krishnapillai v. Holder, 563 F.3d 606 (7th Cir.2009). The court stated: “The background evidence that [petitioner] has submitted, including in particular the December 2006 UNHCR report documenting the mistreatment of Tamils in Sri Lanka (and which recommends that no Tamil from the northern or eastern regions of the country be forced to return) gives us pause.... ” Id. at 620. Notwithstanding the possible closeness of the issue, the Seventh Circuit reasoned that the Board’s view that the evidence was insufficient to meet the high “pattern or practice” standard was not unreasonable. The court explained that the “lengthy armed conflict between the LTTE and the Sri Lankan armed forces has resulted in human lights abuses by both sides, and there is little reason to doubt that innocent Tamils have been arrested, imprisoned, and even tortured by the authorities”. But ... civil strife in a country that causes substantial hardships for an ethnic minority, some of whose members are engaged in an insurgency against the government, does not automatically render each non-combatant member of that minority a subject of persecution. Id. We find the court’s reasoning persuasive, adopt it, and uphold the reasonableness of the Board’s view of Anandarajah’s background evidence and the “pattern or practice” issue.[3]
Anandarajah next argues that he will be persecuted or tortured in Sri Lanka as a failed asylum seeker who has been living in the West, and that the Board mischaraeterized his claim. We agree with the Board that this argument involves a change in personal circumstances and not a change in country conditions. Changed personal circumstances are insufficient to excuse an alien from the time limit on a motion to reopen. Liu v. Att’y Gen. of U.S., 555 F.3d 145 (3d Cir.2009). An alien may file a successive asylum application based on changed personal circumstances or changed country conditions, pursuant to 8 U.S.C. § 1158(a)(2)(D), at any time during proceedings before the entry of a final order of removal, or within the 90-day deadline for a motion to reopen. Outside of those circumstances, changed country conditions under 8 U.S.C. § 1229a(c)(7)(C)(ii) must be shown. Id. at 150-52. See also Matter of C-W-L-, 24 I. & N. Dec. 346 (BIA 2007). For the reasons previously stated, Anandarajah has not made this showing. We note also that the evidence to which he refers in his brief, see Petitioner’s Brief, at 23-25, describing harm to three Tamils who returned to Sri Lanka, does not establish a changed condition in Sri Lanka since the time of his merits hearing. Two of the three incidents described occurred before Anandarajah was placed in removal proceedings, A.R. 211-12, and the third incident was reported on September 11, 2006, A.R. 192, several weeks before the deadline for An *673 andar aj ah to file a timely a motion to reopen. See 8 C.F.R. § 1003.2(c)(3)(ii) (changed country conditions exception does not apply unless evidence is material and “was not available and could not have been discovered or presented at the previous hearing.”).
For the foregoing reasons, we will deny the petition for review.

. The Tamil ethnic separatist LTTE has now been designated a terrorist organization.

. UNHCR stands lor United Nations High Commissioner for Refugees.

. We note that the United States provides Temporary Protected Status (“TPS'') for groups of eligible nationals of certain foreign states from time to time, pursuant to 8 U.S.C. 1254a and 8 C.F.R. Part 244, because of ongoing armed conflict, natural disaster, or some other extraordinary and temporary conditions. Sri Lanka is not currently designated for TPS. See Respondent's Brief, at 23 n. 6.