**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1721
_____

JULIAN RAJANAYAGAN ANANDARAJAH,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-302-954)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 16, 2013
Before:  AMBRO, JORDAN and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed :  October 31, 2013)
_____

OPINION
_____

PER CURIAM

Julian Rajanayagan Anandarajah ("Anandarajah") petitions for review of the

Board of Immigration Appeals' ("BIA" or "Board") decision denying his fourth motion

to reopen removal proceedings.  For the following reasons, we will deny the petition for

review.

I.

Anandarajah, a citizen of Sri Lanka and an ethnic Tamil, petitioned for review of the Board's order affirming the Immigration Judge's ("IJ") decision to deny his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He alleged a fear of persecution, claiming that the Sri Lankan government believes he is, or was, a supporter of the Liberation Tigers of Tamil Eelam ("LTTE"). We denied the petition for review, concluding that substantial evidence supported the IJ's determination that Anandarajah's testimony was not credible. See Anandarajah v. Att'y Gen., 258 F. App'x 495 (3d Cir. 2007).

In 2008, Anandarajah filed a motion to reopen based upon changed country conditions, in which he asserted that there had been a breakdown in the enforcement of the 2002 Cease-Fire Accord, resulting in greater persecution of ethnic Tamils. He also alleged that he would be detained and interrogated upon his arrival as a failed Tamil asylum seeker. We denied the petition for review, concluding that the BIA did not abuse its discretion in determining that Anandarajah failed to show changed country conditions sufficient to excuse the untimeliness of his motion to reopen. See Anandarajah v. Att'y Gen., 352 F. App'x 667 (3d Cir. 2009) (per curiam).

In 2009, Anandarajah filed a second motion to reopen. In this motion, he claimed that his attorney, Visuvanathan Rudrakumaran, is known for his support of the LTTE, and he argued that he was in danger because of his attorney-client relationship with Rudrakaman. The Board denied his motion, noting that the factual basis of

2

Anandarajah's claim for asylum had previously been rejected as not credible.

Anandarajah petitioned for review, but his petition was procedurally terminated at his

request after we denied his motion for a stay of removal. See Anandarajah v. Att'y Gen.,

C.A. No. 10-1498.

In 2010, Anandarajah filed a third motion to reopen, again based upon changed

country conditions. This motion advanced the same arguments as his second motion to

reopen and included essentially the same substantive evidence. The BIA denied the

motion, noting that Anandarajah had once again failed to rebut the IJ's original adverse

credibility determination and had failed to demonstrate changed conditions in Sri Lanka.

We denied his petition for review. See Anandarajah v. Att'y Gen., 456 F. App'x 130 (3d

Cir. 2011) (*per curiam*).

In October 2012, Anandarajah filed a fourth motion to reopen. In this motion, he

claimed that he would be persecuted or tortured upon his return to Sri Lanka because of

his status as a "returned asylum seeker." Specifically, he argued that Sri Lanka requires

applicants for Sri Lankan passports to indicate whether they have applied for asylum or

sign an affidavit stating that they have never applied for or acquired refugee or asylum

status. In denying the motion, the BIA determined that Anandarajah's evidence neither

established a change in country conditions nor demonstrated that he would suffer

persecution upon his return to Sri Lanka. Accordingly, the BIA determined that

Anandarajah lacked a basis for filing his fourth motion to reopen after the 90-day

deadline for motions to reopen had passed. The BIA also declined to exercise its sua

3

sponte authority to reopen. Through counsel, Anandarajah timely filed this petition for review.[1]

## II.

We have jurisdiction under 8 U.S.C. § 1252. We review denials of motions to reopen under a deferential abuse of discretion standard and will not disturb the decision "unless [it is] found to be arbitrary, irrational, or contrary to law."[2] Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004) (citation omitted). Generally, an alien may file only one motion to reopen and must file it with the BIA "no later than 90 days after the date on which the final administrative decision was rendered[.]" 8 C.F.R. § 1003.2(c)(2). The time and number requirements are waived for motions to reopen that are "based upon changed country conditions proved by evidence that is material and was not available and could not have been discovered or presented at the previous proceeding." Pllumi v. Att'y Gen., 642 F.3d 155, 161 (3d Cir. 2011).

Anandarajah does not dispute that this motion to reopen, his fourth, was filed more than 90 days after the BIA's final decision. Rather, he first alleges that the Board abused its discretion by selectively considering the evidence to find that he failed to establish

---

[1] We lack jurisdiction to review the portion of the BIA's decision that denied sua sponte reopening. See Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir. 2003).
[2] Because we find that the BIA decision was not arbitrary, irrational, or contrary to law, we do not reach the BIA's alternative determination that Anandarajah did not establish a prima facie case for asylum relief. See Sevoian v. Ashcroft, 290 F.3d 166, 169-70 (3d Cir. 2002) (citing INS v. Abudu, 485 U.S. 94, 105 (1988) (stating that the Board may deny a motion to reopen in asylum cases where it determines that "the movant would not be entitled to the discretionary grant of relief")).

4

changed country conditions. The BIA is required to consider a party's evidence of changed country conditions, and it "should provide us with more than cursory, summary or conclusory statements, so that we are able to discern its reasons for declining to afford relief to a petitioner." Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir. 2008) (quoting Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006)). However, it need not "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." Id., 437 F.3d at 275. Here, the BIA reviewed—among the evidence that Anandarajah submitted—the Refugee Documentation Centre (Ireland) Legal Aid Board's report on Sri Lanka (the "2010 Irish Report"), which discussed the treatment of returnees to Sri Lanka; the United Kingdom Border Agency's Sri Lanka Bulletin: Recent Reports on Torture and Ill Treatment" ("2011 U.K. Sri Lanka Bulletin"), which summarized other reports concerning the mistreatment and torture of returnees suspected of having ties to the LTTE; news articles from Freedom From Torture and Amnesty International; and statements by other attorneys who represented Tamil clients. Given the Board's thorough review of these documents, its conclusion that Anandarajah's evidence did not demonstrate the existence of changed country conditions was not an abuse of discretion.

To the extent Anandarajah argues that the Board erred by failing to find the existence of changed country conditions, we conclude that the BIA's determination was reasonable. As its decision made explicitly clear, conditions in Sri Lanka are far from ideal, and some returnees, including failed asylum seekers, risk mistreatment; this is especially true for those associated with the LTTE. The BIA noted that "the documents

5

submitted by the respondent show that the Sri Lankan government continues to use mistreatment, including torture, . . . and the victims of mistreatment or torture include individuals who returned from abroad, which in turn may include individuals who had applied for but were denied asylum." (A.R. 8.) This conclusion is supported by the 2010 Irish Report and 2011 U.K. Sri Lanka Bulletin, both of which note that returnees to Sri Lanka, including failed asylum seekers, have risked detention and mistreatment since at least 2004. We agree with the Government that Anandarajah's claim is largely a reiteration of his "failed asylum seeker" argument, which we rejected when we reviewed the Board's denial of his first and third motions to reopen. See Anandarajah, 456 F. App'x at 134; Anandarajah, 352 F. App'x at 672. Based upon the evidence, the BIA plausibly concluded that failed asylum seekers have risked mistreatment upon return to Sri Lanka since before Anandarajah's 2005 hearing.[3] See Pllumi, 642 F.3d at 161 (BIA did not err in denying reopening where "the conditions described have persisted").

Anandarajah also argues that the BIA's decision was irrational, because the agency inexplicably departed from a prior case involving another failed asylum seeker from Sri Lanka; however, he does not explain how the two cases involved similar facts. To the extent that he relies on unpublished BIA decisions, "unpublished, single-member BIA decisions have no precedential value, do not bind the BIA, and therefore do not

---

[3] Contrary to Anandarajah's argument, the Board also reasonably concluded that Sri Lanka's requirement that applicants for passports sign an affidavit regarding whether they have ever applied for or acquired refugee or asylum status is related to Sri Lankan law demanding that an individual granted asylum elsewhere not be issued a Sri Lankan

carry the force of law except as to those parties for whom the opinion is rendered." De Leon-Ochoa v. Att'y Gen., 622 F.3d 341, 350 (3d Cir. 2010).  Furthermore, it appears that in the prior case the BIA was adjudicating a *timely* motion to reopen, as the agency explicitly held that, if considered as a motion for reconsideration, the petitioner's submission would have been untimely.  Compare 8 C.F.R. § 1003.2(b)(2) (establishing a 30-day period for filing reconsideration motions), with 8 C.F.R. § 1003.2(c)(2) (establishing a 90-day period for filing a motion to reopen).  Even fact patterns that may be "almost identical" can lead to different outcomes when different procedural postures are involved.

Finally, Anandarajah asserts that the BIA denied him due process by considering the United Kingdom Border Agency's 2012 Sri Lanka Country of Origin Information Report, a document outside of the record, without allowing him to respond to it.  We agree with the Government that Anandarajah has not shown substantial prejudice.  See Delgado-Sobalvarro v. Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010).  Nowhere in his brief does he describe what his response to this report would have been.  Furthermore, this report was dated March 7, 2012; Anandarajah's motion to reopen, by contrast, was dated October 1, 2012.  This timing suggests that he could have been aware of the report by the time he submitted his motion, and, in any event, he could have asked the BIA to reconsider its decision.

### III.

---

passport.

7

After reviewing the record, we conclude that the Board's decision to deny Anandarajah's motion to reopen was not arbitrary, irrational, or contrary to law. Accordingly, we will deny the petition for review.